[Crim. No. 5206. Second Dist., Div. One. Mar. 14, 1955.]

THE PEOPLE, Respondent v. HOWARD GRANT SALTZ, Appellant.

Simmons & Griffin and E. A. Simmons for Appellant.

Edmund G. Brown, Attorney General, and Jay L. Shavelson, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an amended information filed by the district attorney of Los Angeles County defendant was accused in Count I of the crime of grand theft (Pen. Code, § 487, subd. 3) in that he feloniously took an automobile owned by Mary Ann Haigh.

Count II alleged a violation of section 503 of the Vehicle Code in that defendant feloniously took and drove an automobile belonging to Mary Ann Haigh without her consent and with the intent to deprive her of title and possession thereof.

Count III accused the defendant of the crime of burglary (Pen. Code, § 459) in that he feloniously entered the apartment of Dotti Allen with intent to commit theft.

In Count IV defendant was accused of grand theft (Pen. Code, § 487, subd. 1) in that he feloniously took jewelry and clothing belonging to Dotti Allen and valued in excess of $200.

In Count V, as a separate offense connected in its commission with the charges set forth in all preceding counts, defendant was accused of assault with intent to commit rape upon the person of Louise M. Soper in violation of section 220, Penal Code of California.

In Count VI, as a separate cause of action connected in its commission with Count V, defendant was accused of assault upon Louise M. Soper by means of force likely to produce great bodily injury in violation of section 245, Penal Code of California.

In Count VII, as a separate cause of action, the offense being connected in its commission with the charges set forth in Counts V and VI, defendant was accused of burglary in that he entered the apartment of Louise M. Soper with intent to commit a felony.

It was further alleged that appellant had been previously convicted of armed robbery in Cook County, Illinois.

The public defender was appointed as counsel for defendant and the latter entered a plea of not guilty to each of the offenses charged against him, and denied the prior felony conviction.

When the cause was called for trial a motion was made by a member of the State Bar of California that Messrs. E. A. Simmons and Homer C. Griffin of the Illinois State Bar be admitted to practice in the courts of California for the purpose of representing defendant in the trial of this action. The motion was granted and Attorneys Griffin and Simmons were substituted for the public defender as counsel for defendant. Thereupon, the latter admitted the prior conviction as charged against him in the amended information.

The cause proceeded to trial before a jury which returned verdicts finding defendant guilty as charged in counts I, II, III and IV. The burglary charged in Count III was found to be burglary of the first degree. As to counts V, VI and VII defendant was found not guilty. Motion for a new trial was denied and defendant was sentenced to concurrent terms of imprisonment in the state prison.

From the judgments of conviction and the order denying his motion for a new trial, defendant prosecutes this appeal.

As an aid to understanding the subsequent discussion of points raised on this appeal which refer to matters deemed by us as being beyond the scope of the record on appeal, we deem it advisable to here refer to proceedings had for augmentation of the record on appeal.

In the trial court defendant filed an amended notice of appeal wherein he requested augmentation of the record beyond the normal record on appeal by the addition thereto of certain proceedings and documents. The trial court denied such request on the ground that a notice of appeal had theretofore been filed, and that defendant had failed to set forth the "points on which he intends to rely" (rule 33, subd. (b), Rules on Appeal). Thereafter, defendant, pursuant to rule 12 of the Rules on Appeal, filed in this court a motion for "diminution of the record," in which he sought to have included in the record on appeal the following:

(1) *Voir dire* examination of jurors;

(2) Opening statement of the district attorney;

(3) Argument of counsel;

(4) Affidavit of defendant's attorney, H. C. Griffin;

(5) Certain exhibits of a documentary nature marked and offered in evidence, whether refused or allowed;

(6) Jury instructions, both those given and those requested by defendant but refused;

(7) Defendant's written motion for a new trial.

This court granted defendant's motion in part by ordering the clerk of the superior court to transmit the following items:

(1) The affidavit of H. C. Griffin;

(2) Exhibits introduced or offered into evidence;

(3) Defendant's written motion for a new trial;

(4) Jury instructions given, and those offered by appellant and refused by the trial court.

In all other respects, the motion for "diminution of the record" was denied.

In the order granting in part defendant's motion for diminution of the record this court said: "The record reveals that there was no showing whatever of any materiality of any of the additional matters sought to be included in the record. Therefore, in denying the motion to incorporate such additional matters, the trial court committed no abuse of discretion.

"Augmentation of the record is not a matter of right and granting or refusing thereof is committed to the sound discretion of the court. Augmentation of the record is not to be regarded as a cure-all for negligent preparation of the record by the appellant.

"However, in the instant case the original request for preparation of the record was made by appellant in propria persona, and because of the inclination of the courts to permit augmentation of the record liberally in furtherance of justice, we have come to the conclusion, by reason of the contentions advanced by appellant in the present motion, that his request for diminution of the record should be granted in part."

While defendant was acquitted on counts V, VI, and VII, a brief summary of the evidence as to such counts is here set forth because of its close connection with the events upon which defendant's convictions were predicated.

From a reading of the lengthy reporter's transcript we conclude that the following narrative appearing in the respondent's brief presents a fair epitome of the factual background surrounding this prosecution.

"I

"People's Case

"A. *Evidence Relating to Counts V through VII of the Amended Information.*

"    .    :    .    .    .    .    .    .    .

"Mrs. Soper, the prosecuting witness as to Counts V through VII, first met appellant on May 16, 1953 At that time he came to the apartment house of which Mrs. Soper was the landlady, accompanied by her son and a James Triplett. Triplett and appellant did some work for the prosecutrix and subsequently rented a room from her. At 2:30 a.m. on May 19, 1953, the prosecutrix was awakened by appellant who shouted through her window that he had lost his key. She opened the door to admit him, after which he allegedly grabbed her throat, threw her to the floor, and suggested sexual intercourse. Mrs. Soper's screams aroused a neighbor and appellant was frightened away. Appellant was seen to jump into a yellow car and drive off swiftly. . . .

"B. *Evidence Relating to Counts I and II of the Amended Information.*

"At 12:15 a. m., May 19, 1953, the owner of the stolen vehicle, a 1953 Nash Rambler, with yellow body, black top, and Oklahoma license plates, left the car unlocked in the parking lot at the rear of her apartment. The car was found to be missing at 6:15 the same morning. The owner did not see it again until several days later when she was notified by police, at which time the car was severely damaged. Neither appellant nor any other person had permission to take the car. . . .

"After appellant's altercation with Mrs. Soper, he was seen fleeing in a car answering the general description of the stolen vehicle. No one else was seen in the car at that time. . . .

"At about 3:00 a. m., May 19th, appellant was found by police officers at the corner of Broadway and Sunset Boulevard in Los Angeles sprawled on the sidewalk with his legs dangling into the street, bleeding profusely from the mouth. The stolen vehicle was found, unoccupied, on a turnoff of the Hollywood Freeway, about one-quarter of a mile from the spot where appellant was lying. It was in a severely damaged condition, having crashed against a wall. . . . Inside the car were two suitcases and some woman's jewelry. One of the suitcases was very similar to one owned by appellant and contained some of his clothing and his elementary school diploma. . . . Appellant admitted having been in an automobile accident on the Freeway, but asserted that another had been driving. . . .

"C. *Evidence Relating to Counts III and IV of Amended Information.*

"Mrs. Dotti Allen rented a room separated by a garage from that rented by appellant. She left the room about 11:30 p. m. or 12:00 midnight, May 18, 1953, to spend the night with a neighbor, leaving her door unlocked. She went to Mrs. Soper's apartment at about 2:30 a. m. to investigate the commotion caused by the altercation between appellant and Mrs. Soper, and about one hour later returned to her own room. The room showed signs of having been ransacked and a number of items of a total value of $250.00 or $260.00 were missing. Mrs. Allen identified many of the items which were found in the wrecked automobile as those which had been taken from her room. Some of these items were found in the wrecked car, packed in the suitcase which also contained appellant's clothing. . . .

## "II

### "Defense

"Appellant testified as follows: He met Mrs. Soper's son and James Triplett on May 15 or 16, 1953, and the three of them went to Mrs. Soper's apartment house. Appellant and Triplett did some work for Mrs. Soper and later rented a room from her. On May 18, 1953, appellant worked in Manhattan Beach during the day and returned to his room at 7:00 p. m. At 7:30 p. m., appellant had a quarrel with Mrs. Soper about her son and she ordered him to leave the premises and vacate his room. She threatened, in the event he failed to leave, to 'fix' him by accusing him of attempted rape. After getting some food and resting in his room until 11:00 p. m., appellant went to the Sunset Bowling Alley where he watched the bowling until 12:30 a. m., May 19th. He then went to a hot dog stand across the street from the bowling alley, where he met a sailor named Jim who was driving East. Appellant offered to accompany him and at about 12:45 a. m. appellant and the sailor returned to appellant's room in the sailor's car. The sailor rested on a bed and appellant went out to get some food. He returned at 1:45 a. m. and found the sailor in the car. The sailor said he had appellant's suitcase and that he was in a hurry to see a girl in a tavern before they left for the East. After unsuccessfully looking for the girl, they decided to get a night's rest before starting their trip, and returned to appellant's room although the sailor was reluctant to do so. Appellant could not find his key and Mrs. Soper called him into her apartment stating that she had it. When he entered

the apartment, she reiterated her demand that he leave and refused to give him the key. When he took it from the table, she tried to get it away from him and threatened him with a bottle. He fled to the car and the sailor drove away. Appellant then fell asleep and did not awaken until the accident. He left the scene of the accident to get help and after he arrived at a service station and had spoken to the attendant, he passed out. Appellant denied having burglarized Mrs. Allen's room, denied having stolen Miss Haigh's automobile and denied having attempted to rape Mrs. Soper. He had no explanation for the fact that Mrs. Allen's property was found in his suitcase. . . .

"Mrs. Soper contradicted appellant's testimony in many particulars. She stated that she had never told him to move, had never told him to keep away from her son, and had never threatened to 'fix' him. . . .

A police officer who had interrogated appellant about the existence of the sailor testified in part as follows:

" 'I asked him again if he was sure that there was another man.

" 'At that time he said, "What if I was alone?"

" 'I said, "If you were alone we want to know so that we don't waste time chasing down and running around looking for a second man."

" 'He refused to answer any further questions and became sullen, and we finished our interrogation.'

. . . . . . . . . . . . .

"The owner of a hot dog stand across from the Sunset Bowling Alley testified that his was the only such stand within an area of about five blocks, and that on May 18, 1953, the stand had closed for the night at 10:00 or 11:00 p m., probably closer to 10:00 p. m. . . . This contradicted appellant's story that he had met the sailor in the hot dog stand across from the Sunset Bowling Alley at about 12:30 a. m. on May 19, 1953."

As his first ground for reversal appellant urges that the evidence is insufficient to establish his guilt on counts I through IV. In this contention appellant cannot be sustained. An appellate tribunal is not authorized to retry the cause, and while we may consider the evidence, we cannot weigh it. Our duty begins and ends with a determination as to whether there is in the record evidence, contradicted or uncontradicted, of sufficient substantiality to support the conclusions arrived at by the duly constituted arbiters of the

facts. Many of appellant's arguments as to the function of this court were set at rest in the case of *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], wherein it was stated: ". . . The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could. not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' . . ."

We have set forth herein a detailed narrative of the testimony at the trial and will not now repeat it. Suffice it to say that contained therein is sufficient testimony which when considered in the light of inferences reasonably deducible therefrom, amply support the jury's verdict. To cite a few instances, there is in the record testimony that appellant was positively identified by Mrs. Soper as her assailant; he was seen to jump into an automobile similar to the one he was charged with stealing after his altercation with. his landlady. No one other than appellant was seen in the vehicle at this time. Appellant was found four blocks from the scene of an accident in which the stolen automobile was badly damaged. He admitted having been in the car, and a suitcase similar to his own and containing many of his possessions (including his elementary school diploma) was found in the vehicle. As pointed out by respondent, "Appellant's only explanation for these circumstances was his story that the car was in the possession of a sailor whom he had met for the first time at 12:30 a. m., at a hot dog stand. If this story was not true, the jury's only alternative was to find that the car was in appellant's exclusive possession, and had been stolen by him. It is submitted that the jurors were certainly entitled to disbelieve appellant's story. There was absolutely no evidence of the sailor's existence beyond ap-

pellant's own story, and his identification of an otherwise unidentified photograph as that of the alleged sailor.''

Appellant testified that the sailor had been driving the automobile at the time of the accident. From the condition of the car the jury could reasonably have inferred that the driver must have been severely injured, but upon arrival of the police, the car was empty and the only injured person in the vicinity thereof was the accused. Appellant's story that he met the sailor at the hot dog stand about 12:30 a. m. on May 19, was contradicted by the proprietor of the stand who testified that it had been closed at 10 p. m. or not later than 11 p. m. on the night in question. The jury was also entitled to take into consideration appellant's statement to the police, ''What if I was alone?''

■ As to the burglary charge, there was testimony that Mrs. Allen returned to her room about 3:30 a. m. on the morning of May 19th and discovered it had been burglarized. That an hour before, appellant engaged in an altercation with his landlady and was observed fleeing from the vicinity of the burglary in great haste, vaulting over a porch and leaping into a waiting vehicle which was driven away rapidly and with headlights unlighted. Subsequently, the automobile was found wrecked on the Hollywood Freeway, and in it was found the stolen property as well as some of appellant's belongings. The jury was also entitled to consider appellant's flight from the scene of the burglary and the accident (*People v. Fowler*, 178 Cal. 657, 673 [174 P. 892] ; Pen. Code, § 1127, subd. (c)).

Appellant urges that the over-all picture presented by the evidence militates against any hypothesis other than that of his innocence. He directs our attention to the fact that he secured a room from Mrs. Soper through the latter's son, that he gave to them his true name, told them he was from Chicago and was trying to obtain sufficient funds to return there. In this regard appellant urges that, ''It must be obvious to even the most naive that a defendant, 25 years of age, and married, who had previously run afoul of the law, would certainly not steal a car, and in the very same place where he is living, break into some other person's room and ransack that room, become engaged in a hassle with the landlady, and then flee. Certainly the appellant, or anyone else, would know that just as soon as the burglary was discovered there would be an investigation and that, when his absence was detected, he would be the prime sus-

pect. Persons with criminal experience, who have already given their true name, and additional information about themselves, just don't steal cars and commit burglary in the same building or place where they reside, for they know that it is only a matter of a short time before they will be *ap*rehended by the police. A criminal seeks to hide his crime—not to call attention to himself as being the criminal."

While these contentions might have afforded opportunity for a persuasive argument to the jury against the reliability of witnesses for the prosecution, we see in them nothing from which a reviewing court could justly conclude that the entire testimony of the People's witnesses is, *per se,* unbelievable, and that it was therefore, the jury's duty not only to wholly disregard it, but to accept the appellant's story, or at least find that the latter's guilt had not been disclosed by the evidence to a moral certainty and beyond a reasonable doubt. As has often been repeated, reviewing judges are in no position to determine the credit which should be accorded to witnesses or to weigh their testimony. Consequently, appellate courts are not authorized to review evidence except where, on its face, it may justly be held that it is inherently improbable and is insufficient to support the ultimate issue involved, in which case it is not a review of a question of fact, but purely one of law. ■ A statement to bear upon its face the brand of inherent improbability, or which may be said to be unbelievable *per se,* must involve, we think, a claim that something has been done that it would not seem possible could be done under the circumstances described. The evidence presented against appellant cannot be thus strictured.

■ Appellant's next contention is that the court erred in permitting the complaining witnesses to sit among and converse with members of the jury venire over his objection. However, appellant failed to ask for a transcript of the *voir dire* examination of jurors in his original notice of appeal, and both the trial court and this court, as heretofore pointed out, denied permission to augment the record in that respect. While we do not therefore, have any information as to what took place during the selection of the jury, appellant in his brief asserts that he asked the court to direct the witnesses in the case to sit apart from the prospective jurors, and that the court replied that " 'it might be a good thing' but that he had no authority over how members of the public were seated in the court room." Appellant, however, makes

no claim that he interposed a challenge to the panel or that he attempted to challenge any prospective jurors for cause nor that he exhausted his peremptory challenges. Appellant has therefore failed to meet the burden imposed upon him, not only to show error but that prejudice to his substantial rights ensued therefrom.

█ Appellant's claim that the court erred in permitting the public defender to withdraw as his counsel is without merit.

The record reflects that until the beginning of the trial on January 4, 1954, appellant was represented by Deputy Public Defender Martin. When the cause was called for trial Mr. Martin made the following statement: ''Defendant is ready, with one exception, your Honor. I would like to make a motion at this time in this case—there are two attorneys who are here from Chicago who are acquainted with the case; they came out here from Chicago for the purpose of helping with the preliminary hearing—Mr. Homer Griffin and Mr. Simmons—and they are completely familiar with this case; they have been here for a week preparing it; we have assisted them in getting subpoenas out. At this time I should like to make a motion they be substituted in the place——''

After Attorneys Griffin and Simmons, appellant's present counsel, were admitted to practice law in this state for the limited purpose of trying this cause and after the court had relieved the public defender and substituted private counsel, Attorney Simmons advised the court that it was true that since the preceding month of May he and his associate had been conducting their own investigation of the case in question, that while they were licensed to practice law in Illinois they were not conversant or familiar with the laws of California and that, ''. . . it may well be that during the course of the trial certain situations conceivably may develop where we will need the assistance of local counsel. Now, we certainly at this time would oppose the substitution on the basis of the Public Defender walking out of the case. We think they should be required to stay.''

Following the ruling of the court that appellant could not be represented by both private counsel and the public defender, the court inquired of appellant whether it was satisfactory to him to have private counsel represent him, to which he replied in the affirmative. From the record it is manifest that appellant's counsel, from their own statements, had spent at least seven months investigating the facts of

the case. They had assisted in the preliminary examination, were "completely familiar" with the case, and had received assistance from the public defender.

That the court was justified in relieving the public defender is made manifest by reference to section 27706 of the Government Code of California which, insofar as pertinent to this case provides as follows:

"(a) Upon request of the defendant or upon order of the court, he shall defend, without expense to the defendant, any person who is not financially able to employ counsel . . ."

■ We are satisfied that the learned trial judge correctly interpreted the foregoing section when he stated: ". . . Where the defendant has counsel the Public Defender's office has to step out of the picture. There is no provision which authorizes him nor permits him to act as advisor to other counsel who have been regularly retained to represent the defendant . . ."

■ Appellant was afforded an opportunity to be represented by private counsel or the public defender but not by both. He chose the former. Under these circumstances he was deprived of no constitutional right to be represented by counsel (*People* v. *Northcott,* 209 Cal. 639, 648, 649 [289 P. 634, 70 A.L.R. 806]). If an accused can waive his right to counsel altogether and elect to conduct his own defense (*People* v. *Rose,* 42 Cal.App. 540, 553, 554 [183 P. 874]), certainly he may also elect to be represented by out of state counsel in lieu of the public defender. If, therefore, he thinks he now has reason to believe he suffered by reason of having selected private counsel to assist him in his defense rather than the public defender who had been acting in his behalf, he and not the court nor the law, is to blame.

■ Appellant next complains that the court unreasonably restricted his right of cross-examination, and limited the direct examination of himself. In this regard it appears that the witness Mrs. Soper, on direct examination, had testified she rented one of the units of her property to Dotti Allen (complainant in the burglary charge contained in Count III). On cross-examination of Mrs. Soper appellant attempted to interrogate her as to the location of Mrs. Allen's apartment in the units and an objection was sustained on the ground it was irrelevant and immaterial. We perceive no prejudice in the ruling. As yet the jury had heard no testimony relating to the burglary of Mrs. Allen's apartment. Clothed as the trial judge is with discretionary power to regulate the order and

manner of presentation of evidence, we see no error, under the facts of this case, in the ruling of the court.

During the course of her direct examination, Mrs. Soper made reference to her son when she testified that he and another man brought appellant to her apartment when she first met the latter. On cross-examination the court excluded questions pertaining to the son. No offer of proof was made by appellant as to what he expected to prove by questions concerning the son of Mrs. Soper. In any event, the testimony related solely to the issues of the alleged attack on Mrs. Soper. Since appellant was acquitted as to these counts, little if any prejudice could have ensued to him by reason of the court's ruling.

During the direct examination of appellant his counsel interrogated him as to the nature of the treatment he had received for his injuries following his arrest. He was asked whether he suffered from penicillin poisoning as a result of that treatment. The question fixed no date as to this ailment and when the court intimated that the testimony might be relevant and material if it referred to the penicillin poisoning as being existent at the time appellant was questioned by the officers, his counsel made no attempt to fix the time of the penicillin poisoning. Furthermore, there was no prejudice because the investigating officer himself testified that appellant was suffering severe pain at the time he was interrogated.

Appellant's claim that the exclusion by the court of a purported diagram of Mrs. Soper's apartment offered in evidence by appellant was error cannot be sustained. No proper foundation was laid for its introduction. When the diagram was shown to Mrs. Allen (victim of the burglary charged in Count III, and grand theft charged in Count IV) she testified that it did not accurately, or even approximately, show the area purportedly indicated. And when the document was again offered during appellant's testimony, the court refused its admission into evidence. The ruling was correct. Appellant did not testify that the diagram was substantially or at all correct. That the rulings were without prejudice appears also from the fact that there was much testimony in the record concerning the physical layout of the apartment house, the units, and premises here in question.

Appellant next urges that the deputy district attorney was guilty of prejudicial misconduct during the trial. While the opening and closing arguments of the district attorney are not part of the record on appeal, we are satisfied

that assuming the accuracy of appellant's allegations in his brief, no reversible error is made to appear. He complains that in his opening statement to the jury the prosecutor stated "that the defendant tried to blame the theft of an automobile . . . on a sailor and to insult the uniform of a person who is serving his country . . .," and that during his closing argument the deputy district attorney exhorted the jury to convict the appellant" . . . because if he told you the truth he would have had that imaginary sailor here . . . you know and I know that he made that sailor up—a figment of his imagination. Why doesn't he bring the sailor in? If he existed you know he'd have him here. That he didn't bring the sailor in is a fact that clearly proves the defendant's guilt. And you should consider that as pretty conclusive of his guilt. . . ."

Appellant asserts that at the inception of the trial, in a conference at the bench outside the presence of the jury, the court and prosecutor were advised of the strenuous efforts made by the defense to locate the sailor who appellant claimed was driving the automobile here involved. We perceive no error in the remarks of the deputy district attorney. Appellant was entitled to show what efforts he made to produce the sailor as a witness, but the prosecutor was also entitled to comment upon the absence of this witness and to argue that the diligent but unsuccessful efforts of appellant to produce the sailor warranted the inference that the story regarding the missing witness was a myth.

Appellant next contends that the court misdirected the jury on matters of law. In this repect it is asserted that the court committed error in giving an instruction on the issue of voluntary intoxication, and its materiality in cases where the existence of any particular motive, purpose or intent is a necessary element to constitute a particular kind or degree of crime. Appellant argues that in this case there was no claim of voluntary or any other type of intoxication on his part.

It is the duty of the court to instruct the jury on any issue raised by the pleadings, or disclosed by the evidence.

In the case at bar, the witness Mrs. Soper testified that when appellant knocked on her window and asked for a key she "noticed he was drinking . . . that he wasn't sober." And on cross-examination of this witness appellant's counsel interrogated her as to his intoxication. There also was testimony that appellant had told interrogating officers that he

and the sailor "had been drinking very heavily" on the night here in question; that they had been drinking vodka and whiskey, and mixing their drinks. Appellant himself testified that when he and the sailor visited a tavern they did some drinking. Both the character of some of the crimes charged in the information and the evidence adduced in connection therewith, justified giving the instruction here under attack. (See CALJIC (Crim.) Instruction 78-b, p. 105 and authorities therein cited, pp. 102, 103.)

Finally, although the issue was not raised by appellant, the attorney general with commendable fairness, calls our attention to the fact that appellant was convicted of violation of section 503 of the Vehicle Code (taking an automobile without consent of the owner thereof, with intent to either permanently or temporarily deprive the owner thereof of his title to or possession of such vehicle, whether with or without intent to steal the same), as well as section 487, subdivision (3) of the Penal Code (grand theft).

Under the evidence here presented and upon the authority of *People* v. *Kehoe*, 33 Cal.2d 711 [204 P.2d 321], it must be held that although it was proper to charge appellant with both crimes in the information and the record would support his conviction of either of them, it was error to enter a judgment finding him guilty of both offenses. And, as was said in *People* v. *Kehoe, supra,* p. 716, "Although the sentences were ordered to run concurrently, to 'preclude the dual judgments of the trial court from hereafter working any possible disadvantage or detriment to the defendant in the later fixing of his definite term of the [Adult Authority],' " the judgment, insofar as it finds appellant guilty of a violation of section 503 of the Vehicle Code (Count II) should be set aside.

We have with care and much patience examined the whole record consisting of some 400 pages of the reporter's transcription of the testimony, as well as the briefs exhaustively and ably treating the numerous points pressed upon us for a reversal of the several judgments and the order denying appellant's motion for a new trial, but we have thus discerned no just reason for declaring that appellant was not fairly and legally tried and justly convicted, except as hereinbefore pointed out as to Count II.

For the reasons herein stated the judgment insofar as it finds defendant guilty of a violation of section 503 of the Vehicle Code (Count II) and the order denying a new trial

as to that count is reversed with directions to the court below to dismiss Count II of the information. In all other respects the judgments are affirmed as is also the order denying a new trial.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied March 21, 1955.