[Crim. No. 3165.   Third Dist.   Oct. 9, 1961.]

THE PEOPLE, Respondent, v. RUSSELL C. MILLER, Appellant.

Russell C. Miller, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Nat Agliano, Deputy Attorney General, for Respondent.

WARNE, J. pro tem.*—The defendant was convicted by a jury of violating section 4531 of the Penal Code (escape by a prisoner committed to a state prison from a prison forestry camp). He has appealed from the judgment.

The record shows that on July 28, 1960, the defendant, an inmate of San Quentin State Prison, was transferred to Crystal Creek Conservation Camp Number 13, located approximately 21 miles from Redding, in Shasta County. The camp was one of minimum security and was not enclosed. Eleven strategically placed, clearly visible, signs defined the boundaries beyond which the inmates were not permitted to go without supervision. The signs read, "Camp limits."

Lieutenant Robert Major, the officer in charge of the camp, testified that upon defendant's arrival at the camp he and four other new transferees were instructed as to the camp rules and regulations, and that the instructions covered the "Camp limit" signs and requirement that inmates stay within them unless assigned to supervised work projects away from the camp. However, appellant in his testimony denies that he was instructed with regard to the camp limits.

The record further shows that on the following day, July 29, 1960, defendant was assigned to a work project in the city of Weaverville and in the evening was returned to the camp. At approximately 9 p. m. appellant had a conversation with Sergeant Faust, a corrections officer at the camp. Appellant was also accounted for at the regular 10 p. m. head count.

A bed check conducted at approximately midnight however disclosed that appellant was not in his bed and further that his bed appeared not to have been slept in. A search of the camp and its immediate vicinity ensued but appellant was not found. The search ended on Sunday, July 31, 1960, at approximately 7:45 p. m., when appellant was discovered and apprehended by Faust and two deputy sheriffs approximately 5 miles from camp. At the time of his apprehension, appellant was dressed in regulation blue denim pants and a heavy naval jacket; he was carrying a water canteen on a bandoleer belt.

*Assigned by Chairman of Judicial Council.

As defendant was being taken into Redding by the officers to be held in the county jail, he asked Faust if they had been on a hill the previous night with a light. Faust said that they had been, and appellant said he had been within just a few hundred feet of them. Faust asked appellant why he did it, and appellant replied, ''Well, you know me.''

At the time of his apprehension he was asked why he escaped from the camp and he replied that ''he came out here to . . . fight fires, not to cut brush,'' and then said, ''everything was wrong, I just don't know.''

The record further shows that on Saturday, July 30, 1960, Don Blanchard, a witness for the prosecution, was driving his pickup truck along a logging road about a quarter to one-half mile from the prison camp when he came upon the defendant ''running down the road.'' Blanchard stopped his truck when he reached the defendant and defendant asked how far he was going. Blanchard told him he was going to French Gulch. Defendant then said, ''Well, how about a ride with you?'' Blanchard said, ''OK.'' After Blanchard had driven four or five hundred yards with the defendant, he asked if he were from the camp and defendant said, ''Yes.'' Blanchard then said, ''Do they allow you to get that far away from camp?'' Defendant said, ''Well, they don't allow con men to go that far, but it's OK for me.'' Blanchard then stopped and told appellant that he had better get off. Defendant was let off by a large sign which indicated the access road to the Crystal Creek Conservation Camp. From that point the distance to the camp was less than a quarter of a mile.

Appellant testified that he left the camp at approximately 8:30 p. m., on July 29, 1960; that he had been told that he was going to be sent to fight fire the following day and he decided to climb the hill behind the camp several times in order to get himself in better physical condition; that when he got to the top of the hill it began to rain and became so dark that he lost his way; that he then realized that having been gone so long he would be charged with escape; that he feared Sergeant Faust and did not think his story would be believed; that he decided to go to Redding and turn himself over to the sheriff; and that he thought by doing so he would be able to tell his story to a news reporter and thereby prevent his being charged with escape. He further testified that he took his jacket because it was cloudy and ''it got a little cold at that time, and I wasn't used to being out in the open, and I didn't want to get hot and then catch a cold.'' Questioned

as to why he took the canteen, he replied, "Well, the canteen you have to carry on fires, and you have to get used to having this. It is quite uncomfortable." In substance, appellant further testified that he realized the camp limit signs constituted the boundary of the camp but did not think the rule was strictly enforced since it was a minimum security prison. Furthermore, his intent was to return. In fact, he had climbed the hill behind the camp the previous night and had returned.

Section 4531 of the Penal Code provides in part: "Every prisoner committed to a State prison who escapes or attempts to escape . . . from any prison road camp, prison forestry camp, or other prison camp or prison farm or any other place while under the custody of prison officials, officers or employees; . . . is punishable by imprisonment in a State prison for a term of not less than one year and on conviction thereof the term of imprisonment therefor shall commence from the time such prisoner would otherwise have been discharged from said prison."

Appellant first contends that the evidence is insufficient to support the verdict. The basis of this contention is that he had no intent to escape; that he left the camp merely to exercise; and that he failed to return as intended because he became lost, subsequently forming the intent to remain away because of his fear of a correction officer and his belief that his explanation would not be considered.

Of course, in a criminal prosecution the weight of the evidence is for the jury to determine, and if the circumstances reasonably justify a verdict of guilty by the jury, an opinion of the reviewing court that those circumstances might also be reasonably reconciled with the innocence of the defendant does not warrant a reversal of a verdict of guilty by the jury. (*People* v. *Merkouris*, 52 Cal.2d 672, 678 [344 P.2d 1].) Applying the foregoing rule to the instant case, it is quite apparent that appellant's contention cannot be sustained. The jury was not bound to believe appellant's explanation for his departure from the camp. Further, it appears that his testimony, even if believed, would not constitute a legally cognizable defense. He admitted awareness of leaving the camp boundaries in the first instance, though, in effect, claims a lack of unlawful intent to escape. In *People* v. *Haskins*, 177 Cal.App.2d 84, 88-89 [2 Cal.Rptr. 34], it was held that the crime of escape requires only a general criminal intent and the only requisite for its commission is that the defendant intentionally do the act which constitutes the

crime. Appellant further admitted that he later formed the intent not to return to the camp because he feared the consequences. ■ Fear of a prison officer is no justification for escape. (*People* v. *Whipple,* 100 Cal.App. 261 [279 P. 1008].) There is absolutely no merit in this contention.

■ Appellant makes several contentions of prejudicial misconduct on the part of the district attorney in attempting to elicit from him on cross-examination the nature of the offense involved in a previous conviction. Defendant had admitted that he had been convicted of two felonies. The elicited testimony was for impeachment purposes. There is no question as to the propriety of impeaching a defendant by showing that he has been convicted of a felony. (Code Civ. Proc., § 2051.) Furthermore, questions are permitted to ascertain the nature of the offense involved in the previous conviction. (*People* v. *Tabb,* 137 Cal.App.2d 167 [289 P.2d 858] ; *People* v. *Denne,* 141 Cal.App.2d 499 [297 P.2d 451].)

■ Defendant contends that the district attorney committed prejudicial error in that he argued facts not in evidence when he alluded to defendant's testimony that for four and one-half years prior to his transfer to Crystal Creek Camp, he worked 16 hours a day in the mess hall at San Quentin Prison. The district attorney argued that this evidence tended to show that appellant was not in poor physical condition due to inactivity, which appellant had urged as his reason for exercising. The inference urged by the prosecutor appears reasonable and contrary to appellant's claim is supported by evidence in the record.

It is also claimed that the following portions of the argument were unsupported by the evidence: "I can't imagine it raining for that long. As a matter of fact Sergeant Faust testified as to the duration of the rain, and you will remember that as well as I do."

Contentions of the same nature are made with respect to argument wherein the district attorney stated : "The facts are that he was checked off at 10 :00 o'clock, . . . . After that paddle count clouds formed, some rain came, Mr. Miller thought, 'This is a good time to get out of here.' He took off between 10 :00 and 12 :00 o'clock and got lost. I'll say he got lost. He got lost, but he intentionally got lost. He wanted to get lost from that camp, to get as far, far away as he wanted to. He didn't go up that mountain merely for a hiking trip."

■ And the argument wherein the district attorney referred to the testimony of Mr. Blanchard to the effect that

after he picked appellant up on the logging road, he left him off near a large sign which marked the road leading into the prison camp. The district attorney argued that in the light of this evidence appellant could not claim he was lost on the day following his escape, so he fabricated the story that he was afraid to return to the camp and decided to turn himself in to the Shasta County sheriff instead. These are all reasonable inferences which may be drawn from the evidence. ▆ It is well settled that the district attorney in the course of his argument to the jury may draw any reasonable inferences from the evidence. (*People* v. *Chambers,* 162 Cal.App.2d 215 [328 P.2d 236]; *People* v. *Cheary,* 48 Cal.2d 301 [309 P.2d 431].)

We conclude that the arguments complained of were well within the permissible limits of this rule and did not constitute misconduct.

Defendant contends that the district attorney committed error when he argued that the defense could have subpoenaed the four inmates who were transferred to the camp with defendant, and that defendant's testimony that the new transferees were not instructed with regard to the camp limit signs, if true, would have been substantiated. This contention is without merit. ▆ The district attorney may comment upon the failure of the defendant to produce witnesses who would substantiate his evidence. (*People* v. *Piero,* 79 Cal. App. 357 [249 P. 541]; *People* v. *Fitzgerald,* 14 Cal.App.2d 180 [58 P.2d 718], cert. denied, 299 U.S. 593 [57 S.Ct. 115, 81 L.Ed. 437]; *People* v. *Gist,* 28 Cal.App.2d 287 [82 P.2d 501]; *People* v. *Carter,* 116 Cal.App.2d 533 [253 P.2d 1016]; *People* v. *Saltz,* 131 Cal.App.2d 459 [280 P.2d 900].)

▆ Defendant also contends that the district attorney committed prejudicial misconduct by repeated references to his past offenses and characterizing him as a "hardened, convicted felon." The statement was based strictly upon defendant's admission of his prior convictions of felonies. The prosecutor may use appropriate epithets which are warranted by the evidence without being chargeable with prejudicial misconduct. (*People* v. *Wein,* 50 Cal.2d 383 [326 P.2d 457]; *People* v. *Reznick,* 75 Cal.App.2d 832 [171 P.2d 952].)

▆ Further, it should be noted that defense counsel made no objection during the argument. If appellant deemed that any harmful effect might attach to the statement in question, he should have made timely objection at the trial. (*People* v. *Wein, supra,* p. 396; *People* v. *Amaya,* 40 Cal.2d 70, 79

[251 P.2d 324]; *People* v. *Hardenbrook,* 48 Cal.2d 345, 354 [309 P.2d 424].) ▮▮▮▮ In any event the claimed misconduct could not have, in the light of the overwhelming evidence of guilt, resulted in a miscarriage of justice. (Cal. Const., art. VI, § 4½.)

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.