Filed 2/24/14  P. v. Hook CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B248089 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA085708) |
| v. | |
| CHARLES T. HOOK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mark S. Arnold, Judge.  Affirmed in part and reversed in part.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Charles T. Hook of grand theft auto (Pen. Code, § 487, subd. (d)(1))[1] (count 1) and unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)) (count 2). Defendant admitted having suffered seven prior prison terms (§ 667.5) and one prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

The trial court sentenced defendant to nine years in prison. The sentence consisted of the upper term of three years in count 1, doubled to six years due to the prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and a consecutive three years for three prior prison term enhancements (§ 667.5, subd. (b)). The trial court dismissed four prior prison term enhancements under section 1385. The trial court also imposed a nine-year sentence in count 2, which was stayed under section 654.

Defendant appeals on the grounds that: (1) the trial court prejudicially erred by denying his motion to suppress his statements that were obtained in violation of his Fifth Amendment rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*); and (2) reversal of count 2 is required because he cannot be convicted for both unlawful driving of a vehicle and grand theft auto based on the same act.

## FACTS

On October 10, 2012, Jose Montani parked his 1995 blue Volvo on the street approximately a half block from his Lawndale home. At one point during the evening he went out to the car with his daughter to show her a gravestone marker he had acquired for his mother's grave. In order to open the trunk of the car, he had to open the driver's side door and open all of the locks. He left the keys in the closed driver's side door as he showed his daughter the marker and forgot to retrieve them before returning to his home. He had a box of tools, various papers, and his mother's handicapped placard inside the car.

On the following morning, his daughter-in-law telephoned to tell him that the police had inquired if she owned a Volvo. She was confused because she had previously

---

[1]     All further references to statutes are to the Penal Code unless stated otherwise.

owned a Volvo. She contacted her husband, who informed Montani about the car. Montani saw that his car was not where he had left it. He had given no one permission to take his car. Montani eventually got his car back. The papers, placard, and tools were missing.

Torrance Police Officer David Ortega and his partner, Officer Kevin High, were in their patrol unit in the early morning hours of October 11, 2012, when they saw a Ford with a burned-out license plate lamp. The officers activated the overhead light of the patrol car to initiate a traffic stop. After making several turns, the car eventually stopped in an alleyway. Officer Ortega checked the license plate number with police communications. Before contacting the three occupants, he learned that the registration for the vehicle was expired, even though the tag on the license plate was current. As a result of this discrepancy, the officers attempted to find out more about the vehicle from the driver.

While Officer High spoke with the driver, Officer Ortega remained in the rear observing the other occupants. The driver was a male, the front passenger was a female, and the rear passenger was later identified as defendant. Officer Ortega spoke with defendant, who told him they were in the alley because they were going to visit someone who lived in an apartment complex there. After speaking with defendant, Officer Ortega spoke with the driver, Clemente Delgado, near the patrol car and out of earshot of the others.

Officer Ortega began to hear conflicting stories. After speaking with Delgado, Officer Ortega got defendant out of the car and asked him if he was there to pick up a particular vehicle. Defendant said he was not, and he did not own a vehicle. Officer Ortega searched defendant and found in his pocket a single Mercedes-Benz key and a set of keys that included one generic car key. When asked why he had car keys, defendant said he had found them and indicated they had been lying on the ground. Officer Ortega went to search the adjacent parking lot to find a blue Volvo and located it. The generic key from defendant's pocket unlocked the door.

3

When Officer Ortega asked defendant why he had the key to that car, defendant said it was a coincidence and could not offer an explanation. After speaking with Delgado again and returning to defendant, defendant said that a friend had given him the key and told defendant he had taken the vehicle. Defendant came to see if there was anything in the vehicle that he could sell. He denied having driven it. The next time Officer Ortega spoke with defendant, defendant said that a friend and his wife were in Lawndale and saw a car with a set of keys hanging out. They took the keys, gave them to defendant, and told him where the car was located. Defendant took the car and drove it to the parking lot where the officer found it.

A search of the Volvo yielded a green backpack. Defendant initially denied ownership of the backpack but later admitted it was his. Inside the backpack, Officer Ortega found a gold-colored watch and a ring. Defendant said he had borrowed the watch and found the ring. A handicapped placard was found in the car in which defendant was riding. It did not belong to any of the occupants.

Officer Ortega recorded the last portion of his conversations with defendant, and the recording was played for the jury.

## DISCUSSION

### I. Denial of Motion to Suppress

#### A. *Defendant's Argument*

Defendant asserts that, given the totality of the circumstances, his repeated questioning by the officers over a period of 90 minutes about the car that the officers believed was stolen amounted to a custodial interrogation, and defendant should have been advised of his *Miranda* rights. Because he was not advised, his statements were inadmissible. And since his statements were the only direct evidence that he took the Volvo, the erroneous denial of his motion to suppress was prejudicial under *Chapman v. California* (1967) 386. U.S. 18, 24.

#### B. *Hearing on Motion to Suppress*

Officer High testified that he and Officer Ortega stopped the car because of the nonfunctioning license plate light. Because of the discrepancy between the registration

4

and the tag, he had the driver, Delgado, step out of the car. Officer High asked Delgado about the discrepancy, and Delgado had no explanation. Delgado said he had come there to meet a friend in one of the adjacent apartment buildings, and so that the passenger, defendant, could pick up a vehicle. While he spoke with Delgado, the passengers remained in the vehicle.

After Officer High spoke to Delgado, he had Delgado sit down on the side of the alley. At that time, Officer Ortega contacted the passengers while they were still seated in the car. The passengers were then told to sit down in the alley also. Delgado went to talk with Officer Ortega, and Officer High stayed with the passengers. He was making sure that they remained in the area and caused no harm to his partner. Officer Ortega had defendant and Delgado travel back and forth between him and Officer High as he spoke to them individually and out of earshot of the others. After all the conversations with all three persons, defendant was arrested. The female was released, Delgado's car was impounded, and Delgado was cited for registration fraud, driving with a suspended license, a faulty license plate light, and another count. The officers never drew their guns during this encounter. Defendant was not handcuffed until he was arrested. Defendant was outside, either standing or sitting, while the officers conducted their investigation.

Officer Ortega also testified that he did not draw his gun during any part of his contact with the defendant. The entire investigation lasted approximately one and one-half hours, and defendant was arrested approximately 75 minutes into the encounter. Defendant was not advised of his *Miranda* rights. Officer Ortega spoke with defendant because Delgado indicated they were there to pick up a vehicle that belonged to defendant. Defendant told Officer Ortega that he did not own a vehicle—he was there to visit a friend. Officer Ortega spoke with defendant three or four times, and all of these conversations added up to approximately 15 minutes. Defendant said he was on probation for drugs, and he gave Officer Ortega consent to search his person. Officer Ortega found the car keys at that point. After the last conversation, Officer Ortega believed there was probable cause for arrest. Before being arrested, defendant was not free to leave during the investigation of possible criminal activity. It took Officer Ortega

5

approximately 10 minutes to locate the Volvo in the parking lot. He found the car before he arrested defendant. Prior to arresting defendant he did not know if either of the vehicles involved was stolen.

Upon questioning by the court, Officer Ortega explained that during the 75 minutes between the stop and the arrest, the officers were trying to figure out why defendant was trying to disassociate himself from the vehicle Delgado had mentioned. When the Volvo was found, its license plate did not indicate that the car was stolen, and sheriff's deputies mistakenly contacted a relative of the owner rather than the owner and were told that the vehicle had been sold, which led to some confusion. The officers suspected that drugs in the vehicle might be the reason defendant was trying to distance himself from it. With each subsequent step, there was more information, causing furtherance of the investigation. Defendant gave a different explanation each time Officer Ortega spoke with him, causing the officer to go back and forth between defendant and Delgado.

After hearing argument, the court ruled that the length of time defendant was detained was reasonable based on what occurred in the field. During the 75 minutes between the stop and the arrest, the officers were dealing with three different people and conflicting statements. Merely because there was a detention did not mean there was custody. The officers' actions in investigating whether or not there was criminal activity rising to the level of probable cause was reasonable. There were fewer officers than suspects, defendant was not physically restrained, and there were no firearms displayed. The court stated that the ultimate inquiry in determining whether a suspect is in custody for purposes of *Miranda* is whether a formal arrest or restraint on freedom of movement to the degree associated with a formal arrest occurred. Although there was an interrogation, the People had demonstrated by a preponderance of the evidence that there was no custody. Therefore, *Miranda* warnings were not required.

### C. Relevant Authority

In *Miranda*, the United States Supreme Court held that a person questioned by the police after being "taken into custody or otherwise deprived of his freedom of action in

6

any significant way" must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." (*Miranda*, *supra*, 384 U.S. at p. 444.) "Custody" in the *Miranda* context includes both actual custody and any situation in which a person is deprived of his freedom of action in any significant way. (*People v. Mickey* (1991) 54 Cal.3d 612, 648.)

Whether a person was in custody for *Miranda* purposes is an objective test. (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400; *People v. Stansbury* (1995) 9 Cal.4th 824, 830; see also *Berkemer v. McCarty* (1984) 468 U.S. 420, 442.) "[T]he pertinent inquiry is whether there was ""a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest."" [Citation.]" (*People v. Leonard*, at p. 1400.) In determining the latter, the relevant question is "whether a reasonable person in defendant's position would have felt he or she was in custody." (*People v. Stansbury*, at p. 830.) An officer's undisclosed focus of suspicion is "not relevant" to the custody determination. (*Stansbury v. California* (1994) 511 U.S. 318, 326.)

Determining whether a defendant was in custody within the meaning of *Miranda* is a mixed question of law and fact. (*People v. Ochoa* (1998) 19 Cal.4th 353, 401.) "When reviewing a trial court's determination that a defendant did not undergo custodial interrogation, an appellate court must 'apply a deferential substantial evidence standard' [citation] to the trial court's factual findings regarding the circumstances surrounding the interrogation, and it must independently decide whether, given those circumstances, 'a reasonable person in [the] defendant's position would have felt free to end the questioning and leave' [citation]." (*People v. Leonard*, *supra*, 40 Cal.4th at p. 1400.)

### D. Motion Properly Denied

We conclude that defendant's claim fails because he was not in police custody at the time of the investigatory interviews, and, thus, there was no constitutional obligation to advise him of his *Miranda* rights prior to obtaining his statements.

Among the factors to be considered in determining whether a suspect was in custody are: (1) whether the suspect was formally arrested; (2) the length of the

detention; (3) the location of the interrogation; (4) the officer-suspect ratio; and (5) the demeanor of the officer and nature of the questioning. (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1753.) When determining whether a suspect was in custody, "it is the totality of circumstances that is relevant; 'no one factor is dispositive.' [Citation.]" (*Id*. at p. 1754.)

Defendant was not placed under arrest until near the end of the encounter. As the trial court noted, although the entire incident took 90 minutes, defendant was arrested approximately 75 minutes into the investigation. During that time, two police officers had to deal with three suspects. One asked questions while the other officer watched the others, who were outside of the car and seated in the alley. This necessarily took some time, and it also negated any coercion that might have been felt had defendant been questioned by both officers. The fact that the questioning took place in an alley was of Delgado's choosing.

Delgado and defendant gave differing accounts of their purpose for being in that place, which gave the officers reasonable suspicion to detain them, especially since Delgado had an expired license and a current registration tag on his license plate, despite the fact that the registration had expired. Not only did defendant's statements differ from Delgado's, but defendant changed his story three times. Defendant gave his consent to a search of his person, and car keys from two different cars were found in his pocket, although he said he did not own a car and was not there to pick one up. It took Officer Ortega around 10 minutes to find the blue Volvo that Delgado had told him about, and the key from defendant's pocket opened the door. Officer Ortega again spoke to defendant, who said it was a coincidence. Adding to the delays in the investigation was the confusion caused by the sheriff's deputies contacting Montani's daughter-in-law, who reported that she had recently sold a Volvo and not had one stolen. As Officer Ortega stated, the situation was constantly unfolding and requiring additional investigation.

During the entire time, neither of the officers drew his gun, and defendant was not handcuffed or held in the police car during the investigation. The record indicates that

8

Officer Ortega's recording of a portion of the interviews showed that he was not aggressive or coercive while questioning defendant.

A person who is temporarily detained and subject to investigatory questioning is not necessarily in custody for purposes of *Miranda*. (*Berkemer v. McCarty*, *supra*, 468 U.S. at pp. 438-440; *People v. Forster*, *supra*, 29 Cal.App.4th 1746, 1754.) The term "custody" generally does not include a temporary detention where an officer asks a moderate number of questions to determine a person's identity and to try to obtain information confirming or dispelling the officer's suspicions. (*People v. Farnam* (2002) 28 Cal.4th 107, 180; see also *Berkemer v. McCarty*, at p. 439.) Indeed, *Miranda* itself held that "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. . . . In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." (*Miranda*, *supra*, 384 U.S. at pp. 477-478.) In the instant case, under the totality of the circumstances, a reasonable person would not have felt coerced or restrained in defendant's situation. Clearly, the restraint on defendant's freedom of movement was not that of a formal arrest. (*People v. Leonard*, *supra*, 40 Cal.4th at p. 1400.) Because the officers were not required to advise defendant of his *Miranda* rights prior to his arrest, his statements to the police during the questioning in the alley were admissible at trial. The trial court accordingly did not err in denying defendant's motion to suppress his statements.

## II. Conviction for Unlawful Driving or Taking

Based on principles of double jeopardy, defendant argues that his conviction in count 2 for the unlawful driving or taking of the blue Volvo must be reversed because it is necessarily included within the conviction in count 1 for grand theft auto of the same vehicle.

As the People concede, unlawfully driving or taking a vehicle is a lesser included offense of grand theft auto. (*People v. Buss* (1980) 102 Cal.App.3d 781, 784.) Defendant's case is not like that of *People v. Malamut* (1971) 16 Cal.App.3d 237, 242, where there was a lapse of 62 days between the theft of the auto and the driving charge.

9

There was no "substantial break" between the theft of the vehicle in this case and the time when defendant was found near the car. (See *People v. Kehoe* (1949) 33 Cal.2d 711, 715.) A defendant may not be convicted of both an offense and a lesser included offense. (E.g., *People v. Ortega* (1998) 19 Cal.4th 686, 692; *People v. Reed* (2006) 38 Cal.4th 1224, 1227.)

Accordingly, we order the conviction for the lesser offense, violation of Vehicle Code section 10851, reversed. (*People v. Ortiz* (2002) 101 Cal.App.4th 410, 415.) Since the sentence in count 2 was stayed, there is no need for remand.

## DISPOSITION

The judgment in count 2 is reversed. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

BOREN, P.J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.

10