[Crim. No. 6449. In Bank. Nov. 20, 1959.]

THE PEOPLE, Respondent, v. JAMES EUGENE HOOTON, Appellant.

George T. Davis and Lyle H. Turner, under appointment by the Supreme Court, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

GIBSON, C. J.—Officers Scebbi and Espinosa of the Los Angeles Police Department, on motor patrol duty in a black and white police car, saw defendant walking along the street at 2:30 a. m. in a manner that aroused their suspicion. When first observed, defendant was walking fast, but as the car came close he slackened his pace and walked slowly with his head lowered. After he had been followed for a short distance, defendant stopped suddenly, left the sidewalk and approached the patrol car with his hands in his pockets. The officers stopped their car, and defendant said, "What's the matter? Have I done something wrong?" The officers got out of the car, directed defendant to take his hands out of his pockets and asked him for identification. Defendant removed white cotton gloves he was wearing, took a wallet from his pocket and handed Officer Espinosa a card. Defendant then put his

hand underneath his shirt at the belt line, and Espinosa said, "Get your hand out of there." When defendant withdrew his hand, there was a gun in it and Espinosa yelled, "Look out. Gun." Defendant and Espinosa were then facing each other about three feet apart, and Scebbi, who was standing close by, pushed defendant away from Espinosa. Defendant fired six shots at the officers, neither of whom had his gun out of his holster when defendant started shooting. Defendant's first shot hit Officer Scebbi, who died as a consequence of the wound he sustained. The second bullet went between the two policemen, and the third shot wounded Officer Espinosa in the jaw. Defendant started running down the street, Espinosa fired at him twice, and defendant, shooting as he ran, returned the fire from a distance of approximately 60 feet. In this exchange of fire, Espinosa was wounded in the abdomen, and defendant was hit in the leg.

Defendant was apprehended near the scene of the shooting, and he voluntarily made several statements which were admitted in evidence without objection. Defendant said he was wandering in the streets looking for a car to steal when he noticed that a police car had turned down the street on which he was walking. He tried to walk as if he were drunk in order to avert suspicion. When he reached a place where it was very dark, he stepped off the curb and walked toward the police car. He asked the officers if he had done anything wrong, and one of them replied, "Well, we don't know." The officers got out of the car and asked him for his identification, and, while they were looking at the card he had given them, he pulled out his gun and started shooting. He said there were four warrants out for him, and he knew the officers would check on him, and he did not want to go to jail.

Defendant was found guilty of attempting to murder Espinosa and sentenced to imprisonment for the term prescribed by law. No claim of error is made with respect to this conviction.

The jury also found that the killing of Scebbi constituted murder of the first degree. It then deliberated for two days on the issue of penalty but was unable to agree, and a second jury, impaneled solely for the purpose of determining that issue, fixed the punishment at death. Defendant's motion for a new trial was denied, and he was sentenced to death. The case comes before us automatically under subdivision (b) of section 1239 of the Penal Code.

The evidence is sufficient to support the conviction of first degree murder, and the only questions presented relate to the proceedings had with respect to the issue of penalty. Section 190.1 of the Penal Code provides in part that, in any case where a defendant has been found guilty by a jury of an offense for which the penalty is in the alternative death or life imprisonment, and the same or another jury, trying the issue of penalty, is unable to reach a unanimous verdict on that issue, "the court shall dismiss the jury and either impose the punishment for life in lieu of ordering a new trial on the issue of penalty, or order a new jury impaneled to try the issue of penalty . . . but the issue of guilt shall not be retried by such jury."

■ Defendant argues that the trial court, mistakenly believing that there was no alternative but to impanel the second jury, failed to exercise the power given it by section 190.1 to impose the penalty of life imprisonment. This argument is based on the fact that, in dismissing the first jury after its inability to agree on the penalty, the court remarked, ". . . the law states the Court shall dismiss the jury and order a new trial on the issue of penalty alone. . . ." While the court did not expressly state that it had decided not to sentence defendant to imprisonment for life, it clearly had so determined when it ordered a new trial on the issue of penalty. And it appears that defendant understood that this was the decision of the court since no claim was made at the time or at any subsequent point in the trial that the court had overlooked the power given it by section 190.1 to impose the punishment of life imprisonment in lieu of ordering a new trial on the penalty issue. ■ Moreover, the presumption is that the trial court regularly performed its duty and decided in the exercise of its discretion not to impose life imprisonment. (Code Civ. Proc., § 1963, subd. 15; cf. *People* v. *Cordova*, 14 Cal.2d 308, 313 [94 P.2d 40].)

■ There is no merit in defendant's argument that section 190.1 has the effect of placing the life of the accused twice in jeopardy and is therefore unconstitutional. [4] It is settled that, where errors occur with respect to the imposition of the death penalty by the jury which has found the defendant guilty, another jury may constitutionally determine the punishment in a new trial limited to that issue. (*People* v. *Green,* 47 Cal.2d 209, 232-236 [302 P.2d 307]; *People* v. *Friend,* 47 Cal.2d 749, 772 [306 P.2d 463].) A different conclusion is not warranted here merely because the proceedings

before the second jury resulted from the inability of the first one to agree, rather than, as in the cited decisions, from a reversal sought and obtained by the defendant. In a closely analogous case, where a jury found the defendant guilty but was unable to agree in a separate proceeding on the issue of insanity, it was held that the inability to agree rendered the separate proceeding a nullity but did not affect the determination of guilt and that there was no constitutional objection to impaneling a new jury to try the insanity issue alone. (*People* v. *Messerly*, 46 Cal.App.2d 718 [116 P.2d 781].)

The judgments and the order denying a new trial are affirmed.

Traynor, J., Schauer, J., Spence, J., McComb, J., Peters, J., and White, J., concurred.

Appellant's petition for a rehearing was denied December 16, 1959.