[Crim No. 16806. Second Dist., Div. Four. May 8, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD GARFIELD RICKETTS, Defendant and Appellant.

## Counsel

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Marilyn Mayer Moffett, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

JEFFERSON, J.—A jury found defendant guilty of receiving stolen property (Pen. Code, § 496) and the court committed him to the California Youth Authority. He was acquitted of a second count charging a violation of Vehicle Code, section 10851. Defendant appeals from the commitment (an appealable judgment under Welf. & Inst. Code, § 1737.5).

On the night of September 8-9, 1968, a 1961 Buick station wagon with the license number NTU 563 was stolen from Eastern Motors used car lot.

On October 26, 1968, at about 10 a.m. Officer Fusan stopped a car for a minor traffic violation on the Hollywood Freeway. Defendant was the driver of the vehicle, a 1961 Buick station wagon with the license number NTU 563. At the request of the officer, defendant produced his driver's license for inspection, but he was unable to produce any registration for the vehicle. The officer noticed that there was no key in the ignition. He ran a routine radio check on the car and the report came back that it was stolen. Whereupon, defendant was arrested. At the time defendant was stopped he had one passenger in the car, a female by the name of Amelia Rodriguez.

After the above evidence was introduced, the People rested. Defendant then made a motion for judgment of acquittal pursuant to Penal Code, section 1118.1. The motion was denied.

The case for the defense was then presented. Defendant testified that he had borrowed the car from a friend at MacArthur Park. The friend was named Skip Frizzell. He borrowed it to move his belongings and those of Amelia Rodriguez to a new apartment. He was to return the car the next day but when he went back he could not locate Frizzell. He made several attempts after that to locate him but was unsuccessful. When Frizzell had given him the car, he told him that he could start it without a key because the ignition switch was in the on position. Defendant recalled that he asked him at the time, "Skip, if it's a stolen car, now let me know, I won't use it." Frizzell assured him that it was not stolen. He said that he was buying it from a friend named Carlo and had made a $10 down payment.

Two additional defense witnesses, Karen Frizzell and Amelia Rodriguez, corroborated defendant's testimony. Miss Frizzell stated that she was the sister of Skip Frizzell and that she was present when her brother loaned defendant the Buick. Her brother had been in and out of trouble in the past and she did not know where he could be found. Miss Rodriguez indicated that she was engaged to defendant. She first saw him with the Buick no more than two weeks before his arrest. During that period she went with defendant several times to MacArthur Park to attempt to return the car to Skip Frizzell.

During the course of the cross-examination of defendant, the district attorney, out of the presence of the jury, requested permission to cross-examine defendant about a similar story he had told on a previous occasion when he was found in possession of a stolen car. The district attorney indicated he had evidence defendant told such a story. The court then conducted an extended hearing outside of the presence of the jury to explore the question of the admissibility of such evidence. At the hearing, the district attorney introduced evidence that, on June 16, 1968, defendant entered a plea of guilty to a charge of violation of Vehicle Code, section 10851. Defendant was then called and he testified, under examination by the district attorney, that he never told the officer who arrested him on March 15, 1968, for taking the vehicle involved in the previous charge, that he had borrowed it from somebody in MacArthur Park; he never told anyone that story. Defendant further stated that he was not advised of his constitutional rights before he talked to the officer. Officer Childress then testified that he arrested defendant on March 15th when he found him in a stolen Camaro automobile. He fully advised defendant of his constitutional

rights. Thereafter, defendant freely and voluntarily told him that he had borrowed the car from a friend at MacArthur Park. Defendant then resumed the stand and admitted that he had told one of the officers the story attributed to him. He conceded that the story was a lie. The hearing thereafter concluded with the court ruling that the prosecution would be permitted to present evidence to the jury about the prior incident.

Under resumed cross-examination in the presence of the jury, defendant admitted that he was arrested in a stolen car on March 15, 1968, but denied that he had told the officer it was loaned to him by a friend at MacArthur Park.

When the defense rested, Officer Childress was called in rebuttal. He testified that, when he observed defendant in the stolen car on March 15th, defendant told him about having obtained it from a friend in MacArthur Park.

Defendant testified in surrebuttal, admitting that he had stolen the car in which he was arrested on March 15th and that he had told the officer he "had gotten the car down by MacArthur Park." He stated that he had lied then but that he was telling the truth regarding the present charge.

After the testimony of Officer Childress, the court admonished the jury, pursuant to the request of the defense, that the officer's rebuttal testimony "is not to be considered by you as evidencing any criminal disposition on the part of the defendant," but only, if the jury chooses to accept it, to the extent that it "tends logically and naturally and by reasonable inference to establish any fact material to the prosecution or to overcome any material matters sought to be proved by the defense."

In its formal instructions to the jury, the court elaborated on the above admonition as to the limited admissibility of the testimony and concluded the instruction stating, "The value, if any, of such evidence depends on whether or not it tends to show an absence of an ignorance or mistake of fact, such as would otherwise disprove criminal intent."

Defendant contends that the trial court erred in permitting the People to introduce evidence concerning the story he told when he was previously arrested in the stolen Camaro. The point is without merit. ■ "Evidence of other crimes is *admissible* when it tends logically and by reasonable inference to prove any fact material for the prosecution or to overcome any fact sought to be proved by the defense. [Citations.] ■ It is also admissible where it tends to show presence of a common design, plan or *modus operandi* or consciousness of guilt. [Citations.]" (*People* v. *Pell,* 258 Cal.App.2d 379, 383 [65 Cal.Rptr. 603].) ■ The evidence here in question was highly relevant as tending to establish that the defense testi-

mony about the friend in MacArthur Park loaning defendant the car, was fabricated. From such evidence it could reasonably be inferred that defendant had a "pat" or "ready" alibi for use when stopped in a stolen car. The trial court properly exercised its discretion in admitting the evidence.

Defendant suggests that the jury must not have heeded the trial court's instructions not to consider the evidence as tending to prove criminal disposition. Defendant theorizes that, because he was convicted of receiving stolen property and not of the section 10851 violation, the jury must have believed his testimony about borrowing the car from the friend at the park but found him guilty of the receiving charge because it concluded he must have known it was stolen. Defendant asserts that, "if the jury reached that conclusion, they did so in part based on their knowledge that appellant previously had stolen some other car, and thus had a general criminal predisposition." We are not, however, permitted to conjecture as to what was in the minds of the jurors. Rather, we must presume that the jury followed the instructions given.

Defendant contends that the court should have granted his motion for judgment of acquittal. As indicated in the statement of the facts, when the People first rested their case, defendant made a motion for a directed verdict of acquittal pursuant to Penal Code, section 1118.1. In relevant part, section 1118.1 provides: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. . . ." Stated another way, if the evidence then before the court is sufficient to sustain a conviction, the motion is properly denied. (*People* v. *Sauceda,* 199 Cal.App.2d 47, 55 [18 Cal.Rptr. 452].)

The evidence before the trial court when the motion was made established that defendant was in possession of an automobile stolen less than seven weeks before; the automobile was being driven without an ignition key and without any registration in the vehicle; no evidence had, at that point, been offered explaining the possession of it. "Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt. [Citations.]" (*People* v. *McFarland,* 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449].) " '[P]ossession of stolen property, accompanied by no explanation, or an unsatisfactory explanation of the possession, or by suspicious circumstances, will justify an inference that the goods were received with knowl-

edge that they had been stolen.' " (*People* v. *Lyons,* 50 Cal.2d 245, 258 [324 P.2d 556].) ██ Here there was recent possession with no explanation, plus the suspicious circumstances that the vehicle had no ignition key or registration. Since the evidence was sufficient to support defendant's conviction, the court properly denied the motion for acquittal.

Defendant's further contention that the evidence, taken as a whole, is insufficient because he gave a satisfactory explanation for his possession of the car, is likewise without merit. The jury was not required to believe defendant's story. From the evidence that defendant told a similar story when caught in possession of another stolen vehicle a few months before, which story defendant admitted was false, the jury could reasonably infer that the story he was then telling was also false. In addition, as above indicated, there was the suspicious circumstances of the missing ignition key and registration. The evidence, we conclude, was amply sufficient.

██ Defendant lastly complains that the court gave a misleading instruction on the significance of a defendant's "ignorance or mistake of fact." Alluded to is the following formal instruction given by the court: "An act committed under an ignorance or mistake of fact which disproves any criminal intent is not a crime. Thus a person is not guilty of a crime if he commits an act under an honest and reasonable belief in the existence of certain facts or circumstances which, if true, would make such act or omission lawful." Defendant argues that the giving of this instruction could have led the jury to conclude that he could be found guilty notwithstanding the fact that he may have honestly believed it was not a stolen car, if his belief was found to be unreasonable. Since the issue was not defendant's intent but whether he possessed the required knowledge that the vehicle was stolen, the instruction in question had no place in this type of case. However, we conclude that the error in giving it was nonprejudicial.

The jury was additionally instructed that "there must exist in the mind of the perpetrator a specific intent, to wit, actual knowledge that the property was stolen at the time of the receiving, concealing, or withholding and unless that intent so exists that crime is not committed." Although again referring to the matter of intent, the above instruction specifically equates such intent with "actual knowledge." The jury was further instructed that to be guilty of the crime of receiving stolen property, the defendant must buy or receive the stolen property "knowing the same to be stolen," or conceal or withhold such property "knowing the same to have been stolen." In view of these specific instructions spelling out the requirement of actual knowledge, we conclude that the jury could not have interpreted the instruction as defendant suggests. Our conclusion is reinforced by the fact that

defendant offered no objection to the instruction when he had the opportunity in the trial court.

The judgment is affirmed.

Files, P. J., and Dunn, J., concurred.

A petition for a rehearing was denied May 19, 1970, and appellant's petition for a hearing by the Supreme Court was denied July 1, 1970.