[Crim. No. 18556. Second Dist., Div. Five. Mar. 24, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL L. MALAMUT, Defendant and Appellant.

## COUNSEL

Elinor Chandler for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Herbert A. Levin, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**—Defendant was charged in count I of a three count information with grand theft (Pen. Code, § 487, subd. 3), in count II with a violation of Vehicle Code section 10851, and in count III with receiving stolen property (Pen. Code, § 496). He pleaded not guilty and waived jury trial. By stipulation the cause was submitted on the transcript of the preliminary hearing plus additional evidence. Defendant's motion for acquittal was denied. (Pen. Code, § 1118.) Defendant was found guilty on counts I and II. Count III was dismissed on motion of the People. Defendant was sentenced to one year in county jail on counts I and II. Sentence as to count I was suspended and a stay of execution granted pending service of sentence on count II, the stay to become permanent upon completion of sentence on count II. Sentence on count II was suspended and probation granted for three years on various terms and conditions. Defendant appeals from the judgment and sentence.[1] We construe the appeal to encompass the order granting probation.

On December 8, 1968, Ernest Lixfeld parked his 1961 Porsche at the

---

[1] Judgment and sentence are synonymous in a criminal appeal. (*People* v. *Spencer,* 71 Cal.2d 933, 934-935, fn. 1 [80 Cal.Rptr. 99, 458 P.2d 43].)

Los Angeles airport. He returned later that day and found the Porsche missing. He did not give anyone permission to take his car.

On February 5, 1969, Karl LeBrane, a coworker of Lixfeld, observed a car which he believed to be Lixfeld's near Los Angeles City College. LeBrane recognized the car by its color and the location of the radio antenna. LeBrane called Lixfeld and then called the police. Lixfeld arrived and observed the car. When Lixfeld's car was stolen it had New York license plates. The Porsche Lixfeld saw on February 5 had California plates. The serial number of Lixfeld's car had been on the doorpost. There was no serial number on that location on the Porsche Lixfeld saw February 5. The motor in the Porsche Lixfeld saw on February 5 was not the same one that had been in his car when it was stolen. Lixfeld was able to recognize the Porsche he saw on February 5 as his by the following factors: the car was painted an unusual color which was not a stock Porsche color; the outline of a floral decal remained near the backup light where Lixfeld had pasted such a decal; the keys to Lixfeld's car fit the ignition and started the motor; the radio antenna was over the left rear fender, an unusual location at which Lixfeld himself had installed his antenna; the wiring from the antenna to the radio was underneath the floor covering in a unique manner employed by Lixfeld in installing his antenna; a red plastic bootlace puller for ski boots, distributed by the Coors Company in Colorado, was in the glove compartment of the car Lixfeld saw February 5. Such an item had been in the glove compartment of Lixfeld's car when he purchased it. The item was available only to Coors dealers and could not be purchased.

Officer Velasquez of the Los Angeles Police Department responded to the call from LeBrane. He staked out the Porsche and observed defendant unlock the driver's door, get in and start the vehicle. Defendant was then placed under arrest. Velasquez ran a check on the license plates on the car. They were assigned to a Porsche registered to a Francis J. McGarry on South Ardmore.

After being advised of his constitutional rights defendant stated that he had purchased the car for $1,700 in November 1968 from a man who approached him at his home.

Francis McGarry testified that he had owned a Porsche in 1967, that he had wrecked the car, and that he sold it to a Jerry Purcell for $500. A bill of sale and a pink slip found in defendant's possession and purportedly made out in McGarry's name were not signed by McGarry. McGarry never lived on South Ardmore and did not register a Porsche automobile in 1969.

Officer Matson of the Los Angeles Police Department observed a serial number stamped into the trunk of the Porsche found on February 5. The surface on which the number was stamped appeared to have been dished and ground and not to be in the condition in which cars normally come from the factory.

Defendant testified in his own behalf. He claimed to have purchased the car from a man who approached him at his home, after having checked the license number and the serial number on the pink slip with the Department of Motor Vehicles. He said that he was confused when he told the police that he purchased the car in November 1968. He got that date from the bill of sale in his possession at the time of the arrest. He did not remember when he had actually purchased the car.

■ On this appeal defendant contends that the evidence was insufficient to sustain his conviction of either grand theft or of violating section 10851 of the Vehicle Code because there was no evidence that defendant was the one who took the car. Possession of recently stolen property is so incriminating that only slight additional evidence is necessary to sustain a conviction. (*People* v. *McFarland*, 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449].) ■ Evidence of a false explanation as to how the property came into the defendant's possession will suffice to sustain a conviction for its theft. (*People* v. *McFarland, supra; People* v. *Lumar,* 267 Cal.App.2d 900, 905 [73 Cal.Rptr. 682].) ■ Here defendant's statement that he bought the car in November 1968 was obviously false, since the car was not stolen until December. Additionally, the license plates and motor had been changed and the serial numbers altered and defendant had in his possession forged documents of title. The evidence was sufficient to sustain the convictions.

■ Defendant further argues that he could not be found guilty of both grand theft and of violating section 10851 of the Vehicle Code as the conduct leading to both convictions was but a single transaction. The information, however, charges him with two separate transactions on different dates: grand theft on December 8, 1968; violation of section 10851 of the Vehicle Code on February 5, 1969.

The facts herein are distinguishable from those in *People* v. *Kehoe,* 33 Cal.2d 711 [204 P.2d 321], certiorari denied 338 U.S. 834 [94 L.Ed. 509, 70 S.Ct. 39], cited by defendant. Repudiating the conviction on both counts charged, as distinguished from the question of punishment, the court observed: "The record here under review shows a theft completed in Eureka and Kehoe's arrest one week later while driving the automobile in Salinas. Upon this evidence, he might also have been prosecuted in Monterey County for driving an automobile without the owner's permission. (*People*

v. *Cuevas, supra* [18 Cal.App.2d 151 (63 P.2d 311)].) . . . But the information charged that each offense was committed *on or about the same day* in Humboldt County, and, in the absence of any evidence showing a substantial break between Kehoe's taking and his use of the automobile in that county, only the conviction for one offense may be sustained." (Italics added.) (33 Cal.2d at p. 715.)

Here, there was not only a lapse of a substantial period of time (62 days), but there was also a showing that the vehicle was not being driven in one continuous journey away from the *locus* of the theft. The driving charge was in an entirely different location and obviously for purposes unconnected with the original taking. Moreover, not only was there a switch in license plates and registration slip, but there was also a replacement of the motor and removal of the serial numbers from the body of the car— combined operations which would be considered a major alteration of the vehicle. Under these circumstances, *Kehoe* would appear to permit prosecution and conviction of both offenses, as distinguished from imposition of punishment. The theft was definitely completed at the time the switch of engines took place, and the driving on February 5th, almost two months after the initial taking, was not a driving incidental to the theft as was that shown in *People* v. *Saltz,* 131 Cal.App.2d 459, 474 [280 P.2d 900]. Under the circumstances of this case, there could have been a conviction for receiving stolen property as well as for the theft (cf. *People* v. *Tatum,* 209 Cal.App.2d 179, 185 [25 Cal.Rptr. 832]), except for the special Vehicle Code statute applicable to the situation.

We are aware of *People* v. *Pater,* 267 Cal.App.2d 921, 924, 926 [73 Cal.Rptr. 823], which appears to take a contrary view where the theft and the driving, separately charged, occurred within four days of each other, and where the only change in the stolen vehicle consisted of a license plate and registration switch. The proof on the two counts consisted of the same identical evidence. In that situation, the court declared, at page 926: "There was just one continuous, indivisible, inseverable act or course of conduct which, as we see it, would have retained its indivisible status so long as defendant retained the original dominion over the property obtained by the original theft. Neither clocks, calendars nor county boundaries convert one continuing course of conduct into a series of criminal acts." We would agree if the quoted language is confined to the facts of that case. If this distinction be deemed to be one without substantial difference, then we must decline to follow *Pater* until such time as our Supreme Court overrules *Cuevas* and disclaims the portions of *Kehoe* which we have quoted.

To us, it would seem that a proper balancing of the community interest involved and of the factor of fairness to the defendant can be

better realized by the application of that portion of Penal Code section 654 which proscribes multiple punishments on multiple offenses constituting parts of a single criminal objective as defined in *Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839], certiorari denied 365 U.S. 823 [5 L.Ed.2d 700, 81 S.Ct. 708], rather than by interdicting the convictions on the separate offenses. The court in *Neal* stated: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." The court further explained: "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability." (At p. 20.) (See also: *People* v. *Bauer* (1969) 1 Cal.3d 368, 376 et seq. [82 Cal.Rptr. 357, 461 P.2d 637], cert. den. 400 U.S. 927 [27 L.Ed.2d 187, 91 S.Ct. 190].)

■ Subject to the *Kehoe* restriction, multiple convictions, however, are not prohibited under section 654 where both offenses are simultaneously prosecuted. (*In re Wright,* 65 Cal.2d 650, 653 [56 Cal.Rptr. 110, 422 P.2d 998].) ■ In fact the prosecution of all offenses arising out of a single act, within the meaning of section 654, at the same time is normally required. (*Kellett* v. *Superior Court,* 63 Cal.2d 822, 828-829 [48 Cal. Rptr. 366, 409 P.2d 206].) The defendant is protected against excessive punishment, through the use of the so-called "Niles formula," by the staying of the execution of sentence after conviction on the count carrying the lesser punishment. (*In re Wright, supra,* 65 Cal.2d 650, 655, fn. 4.) At the same time this procedure forecloses a defendant going completely free in the event that upon appeal the conviction on either offense be declared invalid. Legislative recognition of the peculiar interest which the community has in guarding against the theft, unlawful use, or unlawful driving of another's vehicle is evinced by its promulgation of multiple statutes to cover various contingencies incident to a single criminal taking of a motor vehicle, either permanently or temporarily, from its rightful owner or possessor. (See Pen. Code, § 487, subd. 3; Veh. Code, § 10851; and Pen. Code, § 499b.) The public policy implicit in the foregoing legislative scheme (Civ. Code, §§ 22 and 22.1) should be given serious consideration in reaching a satisfactory solution to the problem presented.

■ Since the crimes charged in both counts I and II were reduced to misdemeanors by the imposition of a one-year county jail sentence on each, the stay of execution under Penal Code section 654 in the manner followed

in this case was proper. (Cf. *People* v. *Venegas,* 10 Cal.App.3d 814, 822 [89 Cal.Rptr. 103].)

The judgment and the order granting probation are both affirmed.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1971. Peters, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.