[No. H003254. Sixth Dist. Jan. 31, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID GONZALES DIAZ, Defendant and Appellant.

[No. H004443. Sixth Dist. Jan. 31, 1989.]

In re DAVID GONZALES DIAZ on Habeas Corpus.

**COUNSEL**

Harvey R. Zall, State Public Defender, under appointment by the Court of Appeal, and Leslie Rose, Deputy State Public Defender, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

AGLIANO, P. J.—Defendant David Diaz appeals from a judgment of conviction entered upon a jury verdict finding him guilty of a violation of Penal Code sections 459 and 460, subdivision 1 (burglary of a residence).[1] The court also found defendant had suffered two prior serious felony convictions within the meaning of sections 667 and 1192.7 and sentenced defendant to a total term of fourteen years in state prison.

Since prejudicial error occurred within the meaning of *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], the judgment of conviction must be reversed.

### Statement of Facts

On May 11, 1986, Darlene Gomez was away from her residence from approximately 8 a.m. until 3:30 or 4 p.m. When she returned, the back door was open and her stereo and two speakers were missing. Gomez called the police who arrived within 15 to 20 minutes.

Officer Dario Estrabao was participating in an undercover "sting" operation conducted by the San Jose Police Department on May 11, 1986. At 5:30 p.m. on that date, defendant contacted Estrabao and was videotaped selling the stereo belonging to Gomez to another undercover officer.

The prosecution relied upon the videotape which contained statements by defendant implying he had stolen the stereo. In the conversation the undercover buyer objected to the fact that defendant had no patch cords for the stereo. Defendant responded, "That's all I have. . . . I remember them. . . . I didn't pay attention to that one line that goes from the stereo." Defendant then explained he had been trying to contact Estrabao earlier that day, at "10 or 11," but the line was busy. The undercover buyer again asked whether he had the cord. He replied, "No, man. I can't get it either from where it was. No. I could try to get you one. It just slipped my mind." Defendant also stressed that he worked alone. "There's just one of me."

Defendant conceded he was guilty of receiving stolen property, but sought to persuade the jury he was not the thief. He relied upon the absence of his fingerprints in Ms. Gomez's home and his mother's testimony that he was with her in Morgan Hill until about 4 p.m. on the day of the burglary.

---

[1] All further references are to the Penal Code unless otherwise noted.

*Discussion*

■ Defendant first contends the prosecutor engaged in misconduct during closing argument by referring to defendant's failure to testify in violation of the rule established in *Griffin* v. *California, supra,* 380 U.S. 609.

In opening argument the prosecutor stated that defendant's guilt of burglary was shown by defendant's statements while disposing of the stolen property to the undercover officers. In response, defense counsel argued that defendant's actions and statements indicated he was a seller of stolen property, a "fence" or "middleman," rather than a burglar. Defense counsel also made the following argument: "Probably you might say, well, why doesn't Mr. Diaz take the stand and tell us the names of the people that he bought the property from? I don't think that's an unreasonable wish on your part, but let me give you a hypothetical in that regard." She then explained that "in a criminal society a snitch jacket is one of the most dangerous things a person can wear. More dangerous than I think you ever know. If he doesn't tell us who he bought the property from, I can't make him and the Courts cannot."

In rebuttal, the prosecutor urged the jury to base its verdict on the evidence. The statements which defendant now challenges are the following: (1) "You can listen clearly on that tape. . . . He didn't say he was the middleman. He didn't say that he was a fence. The only person that said he was a fence or middleman is his attorney. Nowhere in the evidence does it say that he's a middleman. He's a fence." (2) "How does he get in contact with these people? More importantly, where is there any evidence that suggests that he did that? Where is there any evidence that suggests he had any contact with any of these people? How does he all of a sudden get in contact with these people? There is no evidence of that." (3) "We have absolutely no evidence whatsoever that says he's a fence. You can watch that tape and watch that tape and watch that tape, but he never once says he's a fence. He never once says he's a middleman." (4) "You are to reject the unreasonable and adopt the reasonable. That's the situation we have here. We have no reasonable evidence whatsoever. No evidence at all in this case that suggests at all he is a fence. We have evidence from his own mouth from the tape that suggests that in fact he committed the burglary."

■ "[T]he Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (*Griffin* v. *California, supra,* 380 U.S. 609, 615 [14 L.Ed.2d 106, 110].) However, *Griffin* error does not occur in every instance where the prosecutor comments on the state of the evidence or on the failure of the defense to call logical witnesses. (*People* v. *Jackson* (1980) 28

Cal.3d 264, 304 [168 Cal.Rptr. 603, 618 P.2d 149].) Here each of the asserted instances of *Griffin* error, when taken in context, referred to the videotape and other evidence and, as such, constituted proper argument.

However, the following comment by the prosecutor is distinguishable from the above remarks. "Now, if we are to believe this gentleman is only a fence, we need to say where is it? *Who testified that he was a fence? Who came in and said he was a fence? Who testified or what evidence do we have that says I'm a middleman? That I didn't steal this property and that someone else did.*" (Italics added.) Throughout most of the argument the prosecutor asked the jury to consider the evidence for any indication that defendant was a fence. On this occasion, however, he erred. The prosecutor's comment was improper because it focused on defendant's failure to testify that someone else and not he stole the stereo. While brief and indirect, nonetheless the comment constituted *Griffin* error. We discuss its impact after reviewing a claim of additional *Griffin* error in a jury instruction.

Defendant contends the trial court improperly informed the jury it could consider defendant's silence in determining guilt and that the instruction compounded the harmful effect of the prosecutor's comment on defendant's failure to testify.

The trial court first gave CALJIC No. 2.60: "It is the constitutional right of the Defendant in a criminal trial that he may not be compelled to testify. You must not draw any inference from the fact that he does not testify. Further, you neither discuss the matter nor permit it to enter into your deliberations in any way." The court then gave CALJIC No. 2.61 and, according to the record, reversed its meaning by stating: "In deciding whether or not to testify, the Defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove beyond a reasonable doubt every essential element of the charge against him. *The lack of testimony on the Defendant's part will supply a failure of proof by the People so as to support a finding against him on any such essential element.*" (Italics added.) Correctly read, the second sentence of the instruction would have said, "*No* lack of testimony on the defendant's part will supply a failure of proof . . . ." Significantly, the People have investigated the accuracy of the record. They neither seek correction nor contend the record is in error. We are, of course, bound by the record as it is thus presented.

Two cases have involved situations similar to the instant one, that is, a combination of improper comment on the defendant's failure to testify and misinstruction of the jury on the issue. In *People* v. *Williams* (1971) 22 Cal.App.3d 34 [99 Cal.Rptr. 103], the prosecutor alluded to the defendant's failure to testify and related it to the issue of motive, implying that defend-

ant's claims were not true. The reviewing court found the error was compounded by former CALJIC No. 2.61,[2] which improperly allowed the jury to "draw an inference from defendant's silence if they [could] use it along with some other evidence." (*Id.* at p. 45.) The *Williams* court reversed based on these and other errors. ·

In *People* v. *Vargas* (1973) 9 Cal.3d 470, 474 [108 Cal.Rptr. 15, 509 P.2d 959], the prosecutor stated in his closing remarks, "And there is no denial at all that [the defendants] were there." After defense counsel objected, the trial court admonished the jury to disregard the prosecutor's statement. As in *Williams,* the court then gave former CALJIC 2.61. The Supreme Court held that both the remark and the instruction violated *Griffin* principles. In determining whether the errors were prejudicial, the court held the applicable test was whether the error was harmless beyond a reasonable doubt and that a reviewing court " 'must focus upon the extent to which the comment itself might have increased the jury's inclination to treat the defendant's silence as an indication of his guilt.' " (*Id.* at p. 478, italics omitted.) The *Vargas* court found no prejudice and distinguished the case from others on the grounds that neither the trial court nor the prosecutor had directly informed the jury it could consider the defendant's failure to testify in determining his guilt, the evidence against defendant was overwhelming, and the trial court had admonished the jury.

In the instant case, the prosecutor's comment was not tempered by admonishment from the court. While the prosecutor's comment may not have directly suggested that the jury should draw adverse inferences from defendant's failure to testify, the instruction unfortunately did so.

The evidence defendant was the burglar was not overwhelming. Defendant was not placed at the scene of the burglary. The prosecutor relied primarily on defendant's statements on the videotape. Some were inaudible. Those audible were not necessarily inconsistent with defendant's role as receiver of the stolen property. Defendant's observation of the cords and his inability to retrieve them need not have proceeded from his presence in the burglarized house. His admission he worked alone did not restrict his activity to burglary. Thus, we cannot conclude the *Griffin* errors did not " 'serve to fill an evidentiary gap in the prosecution's case,' . . ." (*People* v. *Vargas, supra,* 9 Cal.3d 470, 481.) The errors were not harmless beyond a reasonable doubt.

In light of the decision we reach we deem it unnecessary to resolve defendant's remaining contention.

---

[2] Former CALJIC No. 2.61 provided in relevant part as follows: ". . . No lack of testimony on defendant's part will supply a failure of proof by the People so as to support *by itself* a finding against him on any such element." (Italics added.)

The judgment is reversed. Defendant also seeks a writ of habeas corpus. The petition is denied as moot.

Capaccioli, J., concurred.

**BRAUER, J.**—I respectfully dissent.

1.

At the outset it must be stressed that defense counsel engaged in serious misconduct. It passes my understanding how the experienced trial judge let her get away with it. In the absence of any evidence to that effect, she stated to the jury in substance that the defendant bought the property from another but could not take the stand to name his seller lest he jeopardize his life. Who can blame the prosecutor for crying out in response: "We have absolutely no evidence whatsoever that says he's a fence . . . . The only person that said he was a fence or middleman is his attorney."

But then the district attorney went too far, and in the twice repeated use of the word "I" ("who testified . . . that I'm a middleman? That I didn't steal this property . . . ?") he committed *Griffin* error (*Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]. But it is the thesis of this dissent that the error was harmless beyond a reasonable doubt.

First, I disagree most emphatically with the majority's contention that the evidence of guilt was not overwhelming.

I start with the *McFarland* principle enunciated in more than 70 published decisions that possession of recently stolen property is so incriminating that very little additional evidence is necessary in order to convict the possessor of thievery. (*People* v. *McFarland* (1962) 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449].) This principle has been applied where eight weeks had elapsed between theft and discovery of the goods (*People* v. *Malamut* (1971) 16 Cal.App.3d 237 [93 Cal.Rptr. 782]), seven weeks (*People* v. *Ricketts* (1970) 7 Cal.App.3d 441 [86 Cal.Rptr. 647]) and four days (*People* v. *Brown* (1969) 1 Cal.App.3d 161 [81 Cal.Rptr. 401]). Obviously, the strength of the inference increases as the time gap diminishes. In our case, the defendant, by his taped admission, was looking for his purchaser within two to three hours of the earliest time the burglary could have been committed.

And I am astonished at the construction the majority places upon the tape. I submit that the defendant's remarks are reasonably susceptible of no interpretation other than that he saw the cord in the victim's house, neglect-

ed to take it along, obviously cannot go back to retrieve it and conducts his burglary business solo.

### 2.

Even though the majority is not as impressed by the strength of the People's case as I am, it appears that my brethren would not have voted to reverse but for their conviction that the judge misinstructed the jury on a crucial point. If I shared that belief, I would have joined in the holding as *Griffin* error is admittedly to be judged by the *Chapman* standard (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]). But I do not.

While the opinion does not mention it, the record is clear that the written instruction was correct; it stated: ". . . No lack of testimony on defendant's part will supply a failure of proof by the People . . . ." (CALJIC No. 2.61.) The judge initialed the correct instruction and checked the word "given." The transcript reflects the transmutation of "no" into "the." It follows that either the judge misspoke or the reporter incorrectly wrote down what was stated in court. I suggest that the latter is far more likely than the former.

A person, and that includes a judge, is much less prone to misspeak when reading than when speaking extemporaneously. When a misspeaking occurs, it ordinarily involves the substitution of a word similar in sound to the intended one. It is improbable that "the" would come out of the speaker's mouth in place of "no." Most importantly, when a judge makes so egregious an error as to turn a standard instruction into a virtual direction for a verdict of guilty, it is extremely unlikely that everybody in the courtroom would be asleep; if the judge himself does not catch this slip, defense counsel or the prosecutor could be relied upon to do so; both have the ethical duty as well as a motive to speak up.

On the other hand, every experienced trial judge knows that a court reporter's attention level is at its lowest while reporting jury instructions because accuracy can be checked against an accessible writing. Actually, in our case, the reporter did not avail herself of that resource. I counted a significant number of mistakes in the transcript of the instructions which, by their nature, are not reasonably attributable to misspeaking by the judge. Here are some examples:

"Usually and normally when we talk about the facts *in* [and] the law . . . ." (Introductory remarks.)

"Your other duty is to apply the rules of law that I state to you to the facts as you determine them, and in this *case* [way] to arrive at your verdict." (CALJIC No. 1.00.)

"Direct evidence is evidence that directly proves a fact without the necessity of an inference *in* [and] which by itself if found to be true . . . ." (CALJIC No. 2.00.)

"Circumstantial evidence is evidence that if found to be true, proves a fact of [from] which an inference of the existence of *some other* [another] fact may be drawn." (CALJIC No. 2.00.)

"They may be proved also by circumstantial evidence or by a combination of direct or [and] circumstantial evidence." (CALJIC No. 2.00.)

"The ability of the witness to remember _____ [or] to communicate . . . ." (CALJIC No. 2.22.)

"Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing *the* [its] significance." (CALJIC No. 2.21.)

"Further, you _____ [must] neither discuss the matter or permit it to enter into your deliberations . . . ." (CALJIC No. 2.60.)

"One, that a person bought, received, withheld, *stole* [sold] or aided in selling property which had been stolen." (CALJIC No. 14.65.)

"*A* [The] defendant in this case has introduced evidence . . . ." (CALJIC No. 4.50.)

"You shall now retire and select one of your number to act as a foreperson who will *reside* [preside] over your deliberations." (CALJIC No. 17.50.)

It is highly noteworthy that all of the errors just listed are of the same general class as the crucial one in CALJIC No. 2.61, that some of the quoted statements would, if actually uttered, have turned an instruction into gibberish, and that in no case did the judge or either lawyer show awareness that anything out of the ordinary was taking place. To me, the inference is compelling that the transcript does not reflect what was actually stated in court.

But the majority writes: "Significantly, the People have investigated the accuracy of the record. They neither seek correction nor contend the record is in error. We are, of course, bound by the record as it is thus presented." With respect, both statements are wrong. The People merely ascertained

that the transcript agreed with the reporter's notes, which begs the question before us. Indeed, in my view, the Attorney General merits criticism for failing to move for correction of the record pursuant to California Rules of Court, rule 12c. Furthermore, we most assuredly are not bound by any concession of the Attorney General. (*People* v. *Cowger* (1988) 202 Cal.App.3d 1066, 1074 [249 Cal.Rptr. 240].)

And while we are bound by the record as presented, we are not bound to accept it as correct. There is merely a presumption that it is correct. (Code Civ. Proc., § 273.) But I would hold that the presumption has been overcome in light of the accuracy of the written instruction, the judge's initials certifying that he had given it as written, the presumption of regularity which attaches to judicial conduct (*People* v. *Quicke* (1964) 61 Cal.2d 155, 160 [37 Cal.Rptr. 617, 390 P.2d 393]; *People* v. *Hooton* (1959) 53 Cal.2d 85, 88 [346 P.2d 199]; *In re Marriage of Fransen* (1983) 142 Cal.App.3d 419, 424 [190 Cal.Rptr. 885]) and the other factors previously discussed. I submit that the *Griffin* error was harmless beyond a reasonable doubt.

### 3.

If the *Griffin* error was not a reversible one, the court must address an additional claim of the defendant; namely, that the five-year enhancement for prior conviction of a residential burglary, a serious felony, was illegally imposed. I am anxious to discuss that issue in order to voice disagreement with *People* v. *Vasquez* (1988) 204 Cal.App.3d 1531 [252 Cal.Rptr. 331], a recent decision of the Fourth District which, in my judgment, undermines *People* v. *Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150].

The Supreme Court held in *Guerrero* that in determining whether an enhancement for prior conviction of a serious felony is true the trial court may look at the entire record of the conviction. (*Id.* at p. 355.) *Guerrero* is on all fours with the case at bench: in both cases the record before the trial court contained nothing but an information charging a residential burglary and a plea of guilty; in both cases, the trial judge thereupon found the allegation to be true.

*Vasquez,* to the extent relevant, involved essentially the same scenario. The Court of Appeal held that quantum of evidence insufficient for imposition of the enhanced term. It laid down additional requirements such as a separate allegation of residential burglary for purposes of probation ineligi-

bility, an express plea of guilty to the residential character of the burglary, or a reading of the information at the time of the plea including the reference to a dwelling, followed by a plea of guilty "as charged." By fiat, the *Vasquez* court significantly restricted the circumstances under which an enhancement could be found to be true. The holding relied on a footnote in *Guerrero* which explained that the Supreme Court declined to rule on what items in the record were admissible and for what purpose. The footnote then went on to state: ". . . or whether *on the peculiar facts of an individual case* the application of the rule set forth herein might violate the constitutional rights of a criminal defendant." (*Guerrero, supra,* 44 Cal.3d at p. 356, fn. 1, italics added.)

That footnote, I suggest, can offer no solace to those, like the *Vasquez* court, who seem determined to limit *Guerrero*. It is inconceivable to me that the high court would have chosen *Guerrero* as the vehicle for overruling *Alfaro*,[1] if, in the judgment of the court, the enhancement could not constitutionally be imposed in *Guerrero*. In such an event, would our Supreme Court have contented itself with a footnote reference to "peculiar facts of an individual case?" It is clear to me that the footnoted caveat refers to a showing different from and less weighty than that made in the *Guerrero* trial court.[2]

Direct precedent aside, the sufficiency of the evidence is established by reasoning from principle. Exceptions have been grafted upon the hearsay rule where common sense and experience support the reliability of an extrajudicial statement. (5 Wigmore, Evidence (Chadbourn rev. 1974) § 1422, p. 253.) A plea of guilty is accepted in another proceeding because it falls under the exception to the hearsay rule for admissions of a party (Evid. Code, § 1220; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605 [25 Cal.Rptr. 559, 375 P.2d 439].) Some admissions stand on their own feet, as when a person tells the police that he had killed Jane Doe at a certain time and place. Others are meaningless in themselves. The clearest example is an admission consisting of the word "yes" which can be given significance only in the context of the question eliciting the affirmative response. That is why a question is always admissible when necessary to give meaning to the answer, and that is why the information to which a

---

[1] *People* v. *Alfaro* (1986) 42 Cal.3d 627 [230 Cal.Rptr. 129, 724 P.2d 1154].

[2] For example, our court recently reviewed a case in which the trial court had before it a multicount complaint whose first count charged a residential burglary, no information and a plea of guilty in the superior court to "count I of the information."

defendant pled guilty is clearly admissible. (*Arneson* v. *Fox* (1980) 28 Cal.3d 440, 450 [170 Cal.Rptr. 778, 621 P.2d 817].) *Vasquez* does not contend otherwise. And an admission of a party is admissible under section 1220 if it is disserving at the time it is offered in evidence even if it was neutral or self-serving when made. (*People* v. *La Salle* (1980) 103 Cal.App.3d 139, 151 [162 Cal.Rptr. 816], disapproved on other grounds in *People* v. *Kimble* (1988) 44 Cal.3d 480, 498 [244 Cal.Rptr. 148, 749 P.2d 803]; 1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 3.2, rule (2), pp. 155, 174; 1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule, § 640, p. 627.) And why not? If a person is asked: "Did you kill Jane Doe by bashing her with a hammer?" and he wishes to admit the deed but not the method, he is likely to reply: "No, I used a crowbar." It is up to the trier of fact to determine the meaning and scope of an alleged admission. (*People* v. *Kennedy* (1962) 200 Cal.App.2d 814, 818 [19 Cal.Rptr. 683].)

It follows from these principles that the use of a hammer rather than a crowbar is comprehended in a party's admission even if no additional disadvantages attached, at the time of the utterance, to the employment of one rather than the other implement. And by the same token, the admission includes the residential rather than commercial use of the burglarized structure even if that fact was of no consequence to the degree of the crime or the permissible punishment at the time of the plea. In *Arneson* v. *Fox, supra,* 28 Cal.3d 440, 450, the court stated, "The indictment was introduced as an exhibit . . . and by reason of appellant's nolo plea, all facts alleged therein stand admitted."

As to the weight to be given to evidence, no proposition is more firmly armed in adamant[3] than that " 'It is the trier of fact, not the appellate court, that must be convinced . . . beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' . . . 'The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact.' " (*People* v. *Hillery* (1965) 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382]; accord, *People* v. *Sedeno* (1974) 10 Cal.3d 703, 712 [112 Cal.Rptr. 1, 518 P.2d 913].) Or as our Supreme Court put it in *People* v. *Daugherty* (1953) 40 Cal.2d 876, 885 [256 P.2d 911], a finding

---

[3] I am indebted to Justice Mosk for this phrase. (Mosk, J., dis. in *DeRonde* v. *Regents of University of California* (1981) 28 Cal.3d 875, 891 [172 Cal.Rptr. 677, 625 P.2d 220].)

which must be made beyond a reasonable doubt may be reversed on appeal only " '. . . [if] it . . . be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.' " An appellate court which employs the reasonable doubt standard in reviewing a trial court finding oversteps its proper role.

I would affirm the judgment.

A petition for a rehearing was denied on February 28, 1989, and the following opinions were then rendered:

**AGLIANO, P. J.**—In their petition for rehearing the People urge that we consider *United States* v. *Robinson* (1988) 485 U.S. 25 [99 L.Ed.2d 23, 108 S.Ct. 864], for the proposition that the district attorney did not commit *Griffin* error in his argument to the jury. In *Robinson*, defense counsel argued to the jury that the government had not allowed the defendant to explain his conduct. (*Id.* at p. 27 [99 L.Ed.2d at p. 28].) In response, the prosecutor argued that the defendant " 'could have taken the stand and explained it to you.' " (*Id.* at p. 28 [99 L.Ed.2d at p. 29].) The Supreme Court held there had been no infringement of the defendant's Fifth Amendment rights, noting that the prosecutor's comments "did not treat the defendant's silence as substantive evidence of guilt, but instead referred to the possibility of testifying as one of several opportunities which the defendant was afforded, contrary to the statement of his counsel." (*Id.* at p. 32 [99 L.Ed.2d at p. 31].) In the instant case in contrast, the prosecutor commented specifically upon the fact that defendant had not testified to explain "I'm a middleman . . . I didn't steal this property and . . . someone else did." ▮ The comment thus invited the jury to treat defendant's failure to testify as substantive proof that defendant was the thief and not a receiver of stolen goods.

Neither was the prosecutor's comment a direct and fair response. True, defense counsel's comment was unsupported by evidence and therefore improper. In essence, however, it sought only to suggest a reason for defendant's decision not to testify. The statement cannot be viewed as reasonable provocation for the prosecutor's response. *Robinson* is thus inapposite. The prosecutor's comment, though brief, was improper by any *Griffin* error standard.

The petition for rehearing is denied.

Capaccioli, J., concurred.

**BRAUER, J.,** Dissenting.—I am distressed at the denial of rehearing in the face of the fact that both the opinion of the court and my dissent were written in ignorance of a recent United States Supreme Court decision which undermined the major premise of both opinions; namely, the existence of *Griffin* error.

The attempt to distinguish *United States* v. *Robinson* (1988) 485 U.S. 25 [99 L.Ed.2d 23, 108 S.Ct. 864], is unpersuasive. The misconduct of defense counsel in our case was more flagrant and the district attorney's response much more oblique than in *Robinson.*

I would grant rehearing, and, guided by the *Robinson* analysis, find that there was no *Griffin* error. I would then affirm the conviction as the remaining errors, if any there were, ought not to occasion a raised eyebrow laid next to California Constitution, article VI, section 13.

A petition for a rehearing was denied February 28, 1989, and on February 17, 1989, the opinion was modified to read as printed above. Brauer, J., was of the opinion that the petition should be granted. Respondent's petition for review by the Supreme Court was denied April 26, 1989.