Filed 12/30/13  P. v. Bolf CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JACQUELINE ANNE BOLF,<br><br>        Defendant and Appellant. | C072695<br><br>(Super. Ct. No. CM034418) |

Originally charged with murder, defendant Jacqueline Anne Bolf pleaded no contest to voluntary manslaughter, and admitted personally using a firearm in the crime.

On appeal, defendant contends the trial court relied on improper aggravating circumstances in sentencing her to the midterm of six years on the manslaughter conviction.  We find no error in the trial court's conclusions that the victim was

1

particularly vulnerable and that the crime involved great violence. (Cal. Rules of Court, rule 4.421 (a)(1), (3).)[1] We will affirm the judgment.

## BACKGROUND

The facts are taken primarily from the probation report, which for the most part reflects what defendant told police after the crime.

Deputies responded to an emergency call from defendant, who shared a home with her boyfriend (the victim). The deputies found the victim dead from a single gunshot to the upper chest.

Defendant said she came home in a bad mood, told the victim she did not want to talk about it, consumed two large glasses of wine and an Ambien pill, and went to bed. The victim again asked her what was wrong and defendant again said she did not want to talk about it. The victim jumped on top of her and tried to strangle her with one hand while covering her mouth with the other. He cursed her, and she called him a "woman beater." He hit her on the side of the head, pulled her hair and jerked her head.

After two unsuccessful attempts to escape the victim, defendant freed herself, retrieved a handgun from the garage, loaded the gun, cocked back the hammer, and returned to the house. In the hallway, she saw the victim walking toward her. The victim spoke to her, but not in a threatening manner. Defendant held the gun upright as the victim approached her. When he got closer, she reached out with the gun, pressed it against the victim's chest and pushed him away with it, yelling, "don't ever put your hands on me again."

The victim again walked toward her, and defendant again reached out with the gun. She pressed the gun against his chest and the gun accidentally fired. Defendant told police she never intended to shoot the victim.

---

[1] Undesignated rule references are to the California Rules of Court.

Defendant agreed that, in retrospect, she could have avoided conflict with the victim had she left the house through the garage, rather than finding and loading the gun. But she returned to the house because she was in a panic, wanted a place to hide, was wearing pajamas and socks, and did not have her telephone.

Associates of the victim described the couple's relationship as volatile and defendant's temper as "explosive." Three months before the shooting, deputies responded to a domestic violence call at the house because the victim had reported that defendant threatened him with a gun. The victim's hands and forearms showed no evidence of defensive wounds.

After she entered her no contest plea, defendant told probation officers that, when she saw the victim approaching her in the hallway, she feared for her life. Defendant recalled the gun blast, but reported having no recollection of actually shooting the gun. Asked about the clumps of hair police found throughout the meticulously maintained house, defendant said she wore hair extensions that sometimes fell out, the victim had pulled her hair in the bedroom and other extensions likely fell out as she ran away.

The defendant had no prior criminal record.

In anticipation of the sentencing hearing, defense counsel submitted a statement in mitigation, urging the trial court to view defendant as a victim of domestic violence who shot in self-defense, and to grant her probation. The prosecutor submitted a statement in aggravation, urging the trial court to deny probation and to impose the upper term prison commitment.

The original probation report contains the department's recommendation that defendant be denied probation and sentenced to the middle term. The report noted that circumstances in aggravation included that the crime involved great violence, defendant armed herself and used a weapon to commit the offense, and the victim "may be considered vulnerable as he was unarmed." In mitigation, the report noted that defendant had no prior criminal record, had been a public servant her entire career and, based on

3

defendant's statements, the condition of the bedroom and the red marks on defendant's neck, the victim "may have been an aggressor" during the incident.

At the sentencing hearing, a criminalist testified for the prosecution. In support of the prosecution's argument that defendant placed hair extensions in various locations to show that she had been attacked, the criminalist opined that some of the many hair extensions found around the house were attached to natural hair that had been cut, not forcibly pulled from the scalp.

After hearing argument from counsel, the trial court declined defendant's request for probation, and imposed the midterm sentence for both the manslaughter conviction and the firearm allegation, stating: "Although the defendant has no prior record, I'm looking at this as a very serious crime. The defendant used a weapon, obviously inflicting great physical injury on the victim. And I know the argument is that she did not have to flee; however, I do believe under the circumstances that the defendant was not in a position to justify self-defense under the circumstances, and the Court has taken that into consideration. The application for probation, therefore, is denied. [¶] In terms of the aggravating factors, the crime involved great violence. The defendant was armed, used a weapon on an unarmed, potentially vulnerable victim. The defendant had the opportunity to leave. Instead she retrieved a firearm and loaded it and then used it. In mitigation, the defendant has had a blameless record. She is an armed service veteran, and the incident could have been instigated by the victim committing domestic violence against the [defendant]. I considered all of those factors."

## DISCUSSION

Defendant contends the trial court erred in its imposition of the middle term sentence, and urges us to remand the matter for resentencing. In defendant's view, the trial court relied on two legally impermissible reasons in reaching the conclusion that a midterm sentence was proper: that the crime involved great violence (rule 4.421(a)(1)) and that the victim was "potentially vulnerable" (rule 4.421(a)(3)). She concedes that her

4

defense counsel failed to object to the trial court's explanation of its sentencing decision, but contends the issue is not forfeited because defense counsel filed written objections to the probation report that specifically address the issues on appeal; alternatively, if these issues are deemed forfeited, defendant argues her attorney's failure to object constitutes ineffective assistance of counsel.

We agree defendant did not forfeit her contention. (Cf. *People v. Scott* (1994) 9 Cal.4th 331, 356.) Her counsel in the trial court not only argued generally against the imposition of any prison term, but also expressly objected to the aggravating circumstances identified in the probation report, upon which the trial court relied. While counsel did not specifically object after the trial court made its findings regarding circumstances in aggravation, the issues raised on appeal were generally brought to the attention of the trial court and have been adequately preserved for appeal.

Nonetheless, defendant's contention lacks merit.

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (Pen. Code, § 1170, subd. (b).) The California Supreme Court has described a trial court's discretion: "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' [Citation.] As under the former scheme, a trial court will abuse its discretion under the amended scheme if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "[A] trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions. [Citations.] The court's discretion to identify aggravating circumstances is otherwise limited only by the

5

requirement that they be 'reasonably related to the decision being made.' " (*Id*. at p. 848.)

Defendant argues it was an abuse of discretion to say the crime involved great violence as a factor in aggravation within the meaning of rule 4.421(a)(1), because "[t]he crime of voluntary manslaughter necessarily involves violence." True, a trial court may not use a fact that is an element of the crime as an aggravating factor (rule 4.420(d)). But here, the trial court did not improperly rely on an element of the crime. Violence is *not* necessarily an element of voluntary manslaughter, which is the unlawful killing of a human being, without malice, upon sudden quarrel or heat of passion. (Pen. Code, § 192, subd. (a).) While voluntary manslaughter requires that the defendant either intended to kill the victim, or acted in conscious disregard for life (*People v. Parras* (2007) 152 Cal.App.4th 219, 224), the crime may be committed without the perpetrator's use of violence (as by means of poison or use of legal or illegal drugs, or the termination of medical treatment). (Cf. *People v. Dixie* (1979) 98 Cal.App.3d 852, 856 [violence is not an element of murder].) Moreover, defendant has not shown that the trial court erred in concluding the crime involved great violence: she shot the victim at point-blank range, in and of itself a very violent act, and he bled to death.

Nor has defendant shown that the trial court erred in concluding that the victim, unarmed and in his home at night, was not particularly vulnerable within the meaning of rule 4.421(a)(3).[2] "As used in the context of rule 421(a)(3) [now rule 4.421(a)(3)], a

_____

[2] Rule 4.421(a)(3), and the cases construing it and its predecessor, all used the words "particularly vulnerable" to describe factors in aggravation the trial court may consider. The trial court's use instead of the words "potentially vulnerable" at sentencing may be an error in transcription, or an occasion in which the trial court misspoke. In any event, we presume that a trial court " 'knows and applies the correct statutory and case law.' " (*People v. Thomas* (2011) 52 Cal.4th 336, 361.) This general principle applies to a trial court's sentencing determinations. (See, e.g., *People v. Moran* (1970) 1 Cal.3d 755, 762 [decision to decline to commit adult to the youth authority]; *People v. Quicke* (1964) 61 Cal.2d 155, 159-160 [decision to impose death penalty]; *People v. Hooton* (1959)

'particularly vulnerable' victim is one who is vulnerable 'in a special or unusual degree, to an extent greater than in other cases. Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act. An attack upon a vulnerable victim takes something less than intestinal fortitude. In the jargon of football players, it is a cheap shot.' [Citation.] Rule 421(a)(3) has thus far been applied exclusively in criminal cases involving violent felonies, where the age or physical characteristics of the victim, or the circumstances under which the crime is committed, make the defendant's act especially contemptible." (*People v. Bloom* (1983) 142 Cal.App.3d 310, 321-322, fn. omitted.) Here, as the People argued, the victim was unarmed in his home, in the company only of his live-in girlfriend. Evidence of recently exchanged text messages between the parties, submitted by the People in support of their argument that the crime warranted the upper term, showed the two were getting along. This evidence shows that the victim was unguarded and thus susceptible to defendant's

---

53 Cal.2d 85, 88 [determination to impose life sentence].) And "[i]solated or ambiguous remarks by the trial court do not overcome that presumption. The party attacking the judgment must clearly and affirmatively demonstrate that the trial court relied on improper considerations. [Citation.]" (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 835.)

7

criminal act. The trial court did not err in considering these circumstances and concluding the victim was particularly vulnerable.

## DISPOSITION

The judgment is affirmed.


                                                          _____MAURO_____, J.


We concur:


_____RAYE_____, P. J.


_____DUARTE_____, J.